GRAND LODGE OF ANCIENT ORDER OF UNITED WORK-MEN OF THE STATE OF MICHIGAN v. McKAY.

LIFE INSURANCE—MUTUAL BENEFIT INSURANCE — DESIGNATION OF BENEFICIARY—MEMBER OF FAMILY—EVIDENCE.

On a bill by a fraternal beneficial association to interplead the claimants of the proceeds of a certificate, evidence examined, and *held*, that a foster son of deceased, never legally adopted, who had his own home, separate from that of deceased, was not a member of the family of deceased, and that the designation of him as beneficiary in the certificate was invalid under the rules of the order.[1]

---

[1] As to who is a member of the "family" within contract of benefit society, see note to *Supreme Lodge, Order of Mutual Protection* v. *Nevins* (Mich.), 3 L. R. A. (N. S.) 334.

Cross-appeals from Wayne; Rohnert, J.    Submitted
June 5, 1907.    (Docket No. 30.)    Decided July 1, 1907.

Bill of interpleader by the Grand Lodge of the Ancient
Order of United Workmen of the State of Michigan
against Mary J. McKay, William D. McKay, Lillie Bain,
Annie McKay, and Margaret McDonald to determine
title to the proceeds of a benefit certificate.    From a de-
cree awarding a part of the fund to defendant Mary J.
McKay, defendant William D. McKay appeals; and from
a decree awarding the balance of the fund to defendant
William D. McKay, defendants Bain, Annie McKay, and
McDonald appeal.    Modified and affirmed.

*John E. Ryan* (*Van Zile & Brownson*, of counsel),
for appellant William D. McKay.

*Corliss, Leete & Joslyn*, for appellants Bain, Annie
McKay, and McDonald.

*Wardall & Wardall*, for appellee.

BLAIR, J.    Complainant is a fraternal, beneficiary as-
sociation, organized under Act No. 130, Pub. Acts 1899
(2 Comp. Laws, § 8047).    Robert G. McKay became a
member February 28, 1878, at Detroit, and remained a
member until his death, September 30, 1904, in Seattle,
Wash.    Complainant filed its bill of interpleader and de-
posited the beneficiary fund of $2,000 in court for distribu-
tion to such claimants as should be determined to be en-
titled thereto.    Decree of interpleader was entered, and
complainant was paid its costs of $50 out of the fund, so
that it is no longer interested in the case.

Defendant Mary J. McKay was the divorced wife of
the deceased, Robert G. McKay, and claims the fund by
reason of the alleged payment by her of certain assess-
ments during the life of deceased.    She was awarded
$500 by the decree of the lower court.    Defendant Wil-
liam D. McKay claims the entire fund as holder of the

last beneficiary certificate, and under the will of the deceased. He was not the son of the deceased, was not related to him in any way by blood, was never legally adopted, but claims to have been " a member of the family of deceased." He filed a cross-appeal from the decision of the lower court, claiming the entire fund, instead of the $1,450 awarded him by the decree of the trial court. The remaining claimants, Lillie Bain, Annie McKay, and Margaret McDonald, who also appeal, are the three sisters of the deceased. They are his sole legal heirs, and were the holders of a prior certificate. They claim the fund as his legal heirs (being the only blood relatives of the deceased) and as holders of the prior certificate. They have consented in their answer and cross-bill that the widow of the deceased shall receive from the fund the repayment to her of moneys paid by her as assessments, and are satisfied with the allowance of $500 made to her by the court below, but they claim that the remainder of the fund belongs to them under the rules and regulations of the Ancient Order of United Workmen and by law as the legal heirs of deceased. The by-laws of the complainant provide :

" Sec. 15. Each and every member shall designate the person or persons to whom the beneficiary fund due at his death shall be paid, who shall in every instance be one or more members of the family of the member or some person or persons related to him by blood, or who shall be dependent upon him."

William D. McKay was neither a relative by blood nor dependent upon Robert G. McKay. The ground of eligibility to the beneficiary fund, upon which, if any, he is entitled to it, is that he was a member of the family of the deceased. The certificate designating William D. McKay as beneficiary was executed April 27, 1904. Robert G. McKay and Mary J. McKay were married in 1867. In 1879 Mrs. McKay took William D. McKay from a foundling hospital, and brought him up, but he was never legally adopted. From 1879 to 1886 Robert and Mary McKay

resided at Detroit, he a member of the police force, she keeping a small millinery store. In 1887 they moved to Jamestown, N. D. Here a separation occurred, Mrs. McKay returning to Benton Harbor, Mich., where she lived from 1887 to 1890 with the boy, William McKay. Robert McKay went west to Ellensburg, Wash. From 1890 to 1892 they lived together after a reconciliation at Ellensburg, Wash. From 1892 to 1896 they lived at Kirkland, across Lake Washington, near Seattle, where the boy attended school. From 1896 to 1900 Mary J. McKay and the boy William lived in Seattle; she doing dressmaking, he working as a stenographer, they going back to Kirkland frequently on Saturday nights, and staying until Monday morning. In 1901 both Robert G. and Mary J. McKay lived in a new house built by them at Kirkland. William was working in Seattle and living there, going now and then to Kirkland from Saturday night until Monday. In 1902 Robert G. and Mary J. McKay were divorced and separated, Robert going to a small place across the lake. William was married during this year, and for three months he and his wife boarded with Mary J. McKay. In November, 1903, William D. McKay moved with his wife into a house on Queen Ann Hill, Seattle. He testifies:

" Q. Did your father or mother visit you there?

"A. Mother did for a short time after we moved there, and then she quit coming, and during all the time father came out. He made his home right with us.

" Q. Would he be constantly with you there on Queen Ann Hill?

"A. Nearly so, Mr. Ryan. He had a room across the lake in a tumbledown brick building which he took after the divorce, merely stayed there to protect himself for voting, so that he would be entitled to vote across the lake, but his home was practically with us. Always every Sunday he would come over for the first thing Sunday morning, go to church twice a day, stay over Sunday night, and quite frequently would not go back until Monday night or Tuesday morning. * * *

" Q. Up to the time you became self-supporting, Mc-

Kay, Mrs. Mary McKay supported you, bought your clothes, sent you to school and educated you ?

"*A.* Yes, sir; up to the time I started to support myself.    *    *    *

"*Q.* You testified that after your marriage you lived for some time with Mrs. McKay ?

"*A.* Yes.

"*Q.* Did you pay your board ?

"*A.* Yes, In fact, I more than paid it.   At the time I left there was a grocery bill of about $19 that had come while I was there.   I went up to Mr. Brooks, the storekeeper, and paid all of that before I left—every cent of it.
*    *    *

"*Q.* Who owns the home where you live ?

"*Mr. Douglas:* Objected to as incompetent, irrelevant and immaterial.

"*A.* We own it.   It was given to us by my wife's mother.

"*Q.* It was mortgaged for $1,700, was it not ?

"*A.* That was merely a blind mortgage to protect the money that she had put into it.   She wanted us to have it for a home, and there was some dispute about it among the other children, so she closed the deal in that manner."

Ellen A. McKay, wife of William D. McKay, testified:

"After we were married we lived with mother for some time, I mean Mr. McKay's mother; that was for two or three months.   Afterwards we went to housekeeping in September.   Mr. Robert G. McKay lived with us then some little time, nine or ten months.

"*Q.* After you left Kirkland, where did you move to ?

"*A.* To Anacortes.   We lived there two or three months, and then went to live at Queen Ann Hill, Seattle, in our own home.   We have lived there for two years. I recall when Robert G. McKay died.   It was September 30, 1904.

"*Q.* Prior to his death and after you returned to Seattle and moved on Queen Ann Hill, did he make his home with you ?

"*A.* He spent his Sundays with us, and also two or three days during the week.

"*Q.* He still kept his home across the lake, did he ?

"*A.* Yes, sir.   He was always welcome at our house.    *
*    *    When he would go back across the lake to his room across the lake, to his room after leaving our home, he

usually took with him bread, cake, and pie that I made for him, that I baked myself. We attended church together, and went out in company with his mother and father. I looked after the care of his clothes. When he lived with us, I did his washing and mending, and after we moved here I always did his mendings. * * * For two or three months after our marriage we lived with Mr. and Mrs. McKay at Kirkland. Afterwards we kept house at Kirkland for nine or ten months. Then we lived at Anacortes two or three months, and then during the year 1903 or 1904 occupied our own home on Queen Ann Hill, Seattle, commencing about the first of November, 1903.

"Q. Well, from December 1, 1903, until the present time, you and your husband have occupied your own home on Queen Ann Hill?

"A. Yes, sir.

"Q. During all this time Mr. Robert G. McKay occupied his own home across the lake?

"A. Yes, sir; since we have been in Seattle.

"Q. He always called that his home, and he voted there?

"A. Yes, sir.

"Q. He voted there?

"A. I don't know where he voted.

"Q. Since the time you went to Anacortes, neither you nor your husband have lived with Mr. Robert G. McKay in his home, have you?

"A. No, sir.

"Q. Since you have been married, has your husband earned his own living?

"A. Yes, sir.

"Q. He has not been supported by R. G. McKay at any time?

"A. No, sir. * * * We were married in April, 1902, and lived directly after that with Mrs. McKay for two or three months. We paid half the expenses, and she paid the other half. Then we went to live in Kirkland and went to housekeeping, and Mr. McKay lived with us there and paid half the expenses. Then we went to Anacortes, and from there to Queen Ann Hill. Mr. McKay still lived at Kirkland.

"Q. He always lived there, did he?

"A. Yes. He came to visit us occasionally on Queen Ann Hill two or three days a week."

Under the facts disclosed by this record, the defendant

William D. McKay was not a member of the decedent's family. The case is ruled by *Supreme Lodge Order of Mutual Protection* v. *Dewey*, 142 Mich. 666 (3 L. R. A. [N. S.] 334.)

As defendants Lillie Bain, Annie McKay, and Margaret McDonald, who are entitled to the fund, consent that the decree, so far as in favor of Mary J. McKay, may stand, the decree will be modified to provide that the balance of $1,450 shall be paid to said defendants Lillie, Annie, and Margaret, or their solicitors, and, as so modified, the decree is affirmed, with costs of both courts to said defendants against the defendant William D. McKay.

CARPENTER, GRANT, MONTGOMERY, and OSTRANDER, JJ., concurred.