SUPREME LODGE ORDER OF MUTUAL PROTECTION *v.* DEWEY.

1. INSURANCE—MUTUAL BENEFIT INSURANCE—BENEFICIARIES.

A stepfather, who was not a member of his stepdaughter's household at the time of her death, though at a previous time he had boarded with her for a time, was not a member of her family, within chapter 73, § 1, Hurd's Rev. Stat. Ill. 1903, and the provision of a benefit certificate issued to her permitting the payment of the death benefit to a member of her family.

2. SAME.

Where a benefit certificate provided that the rights of the beneficiary should be determined by the laws of the order in force at the death of the member, and at that time the laws of the order provided that, if the beneficiary designated proved to be an unlawful one, the wife or husband of the member should be recognized as the first claimant for the benefit, and the policy named as beneficiary the member's stepfather, who was not a member of her family, her husband had a direct interest in the contract which he was entitled to enforce, though the association was willing to pay the benefit to the stepfather.

Appeal from Muskegon; Russell, J. Submitted February 8, 1905. (Docket No. 112.) Decided January 24, 1906.

Bill of interpleader by the Supreme Lodge, Order of Mutual Protection, against Theodore B. Dewey and Joseph W. Ducheney to determine title to the proceeds of a benefit certificate. From a decree for defendant Ducheney, Melvin J. Nevins, administrator of the estate of defendant Dewey, deceased, appeals. Affirmed.

*Cross, Lovelace & Ross*, for appellant.
*William Carpenter*, for appellee.

BLAIR, J. Complainant, a fraternal benefit society, organized under the laws of Illinois, filed its bill of interpleader against the defendants to determine the proper party to receive the amount, conceded to be due, of a benefit certificate issued to Myrtle M. Ducheney, who, at the time of her death, was the wife of defendant Ducheney.

The defendant Dewey was stepfather to Mrs. Ducheney, having married her mother in November, 1894. At the time of her marriage, Mrs. Dewey owned a home on Apple street in the city of Muskegon, where she, her husband, and her daughter Myrtle lived together as a family till some time in 1897, when Myrtle married a Mr. Folsgraf and removed with him to a house on Williams street in the same city, where they resided till the death of Mrs. Dewey in October, 1900. After the death of Mrs. Dewey, Mrs. Folsgraf and her husband moved into the Apple street home and Dewey boarded with them for about a month, when he moved into rooms in the Landreth block in said city. Mr. and Mrs. Folsgraf continued to reside in the house on Apple street till the death of Folsgraf, March 11, 1902, when Mrs. Folsgraf also moved into rooms in the Landreth block, where she remained for about two months, when she married the defendant Ducheney and removed with him to Chicago, where she remained until she died. The relations between defendant

Dewey and his stepdaughter were very affectionate, as much so as though they were father and daughter, and she visited him very frequently after leaving his home, and, while living in the block, they went out to their meals together and she took a large part of the care of his rooms.

On July 13, 1900, Mrs. Folsgraf presented to Muskegon Lodge of complainant an application containing, among other things, the following:

"I hereby apply for a $1,000.00 Benefit Certificate, to be made payable to

| Name of Beneficiary. | Age | Relationship. | Amount of Benefit. |
|---|---|---|---|
| William A. Folsgraf | 28 | Husband | $500.00 |
| Theodore B. Dewey | 37 | Stepfather | 500.00 |

[Signed]          "MYRTLE M. FOLSGRAF,
                                    "Applicant.

"Signature witnessed by R. G. CAVANAUGH,
                                    "Medical Examiner.

"Residence of applicant, 159 Apple St.

"No. 17,813.    Accepted as a beneficiary member, July 31, 1900."

On April 5, 1902, Mrs. Folsgraf presented a request for a change of the certificate, as follows:

"Application to be signed by every member who for any cause desires new certificate issued, including for a change of occupation or residence.

"To the Supreme Lodge, Order of Mutual Protection:

"I, the undersigned, to whom Benefit Certificate No. 17,813 was issued, do hereby cancel the same and request that a new one be issued to me for the sum of one thousand dollars and payable to

| Full name of Beneficiary | Age | Relationship to Member. | Amount |
|---|---|---|---|
| Theodore B. Dewey | 30 | Father. | $1,000.00 |

"Witness my hand and seal this 5th day of April, 1902.

                              "MYRTLE M. FOLSGRAF.

"I hereby certify to the signature and that the required fee was paid.

          "————, Secretary of Lodge No. ——."

A policy was issued, the material portions of which are as follows:

"That upon satisfactory proof of the death of the within named member (Myrtle M. Folsgraf) being made to the order and in the manner required by its laws, provided he was on the date of his death in good standing and had while a member complied in every particular with the law of the order, there would be paid, subject to all conditions, provisions and restrictions of the laws of said order in force on the date of said death to her father, Theodore B. Dewey, one assessment upon the membership not exceeding the sum of one thousand dollars.

"The express conditions upon which this certificate is issued are:

"*First.* That the rights of the above-named beneficiary or beneficiaries shall be determined by the laws of the order in force on the day of the death of the member, and it is agreed that the order shall have the right to enact, amend, or repeal any of the laws of the order, and that the rights and benefits of said member and of his beneficiary shall be subject in all respects to any and all enactments, amendments or repeals of said laws hereinafter made, even though said rights or benefits, as they are now or may hereinafter be, are thereby affected."

On February 11, 1903, Mrs. Ducheney wrote to Mr. Dewey from Chicago. The following are extracts from her letter:

"Chicago, Ill., Feb. 11, 1903.

"*Dear Dewey:* I received your letter and am glad to hear from you and to know you are better. You don't know how I worried, for if anything should happen you I don't know what I would do, for you are all I have left to stand by me now, and I know you always will, let come what will, and the day may not be so far away that I might need you. You don't know what I would give to be home once more. It is just eleven months ago today that Will died and I have cried all day. Oh, you don't know what I would give if I had him back. Dewey, life is almost unbearable to me. I have worried until I look as old as Aunt Hat. How I would like to see you, and you must come as soon as the boats begin to run. * * * Say, Dewey, about that policy, I went down with it Tuesday and they told me there wasn't anything to do to it

unless I wanted it changed in some one else's name, and I don't. I will keep it up in your name, and, Dewey, if anything should happen me promise that no matter where I am you will come and get me and have me buried with the rest. There will be enough to do that and have some left, and if you outlive me, there is more besides that, for when I am through with my home, it is yours, and when I come home this summer, I will have it fixed so I know you will get it after me; it belongs to you. And now about paying the insurance; there isn't any use in me sending the money over there every month as long as Ella has it from the rent, so you go up there and take out what you want to. You can take one month at a time or two or three, just to suit yourself. I will write her about it so she will know it is all right, so let me know what to do with the policy, whether I shall send it back to you or not. * * * Well, I guess I have wrote all I can for this time, so I close, hoping to hear from you soon. I remain as ever your loving

"MYRTIE.

"Now don't forget to tell me about that policy.
"1053 Robey and Fifteenth Street."

Defendant Dewey paid all of the premiums on this policy except two after Folsgraf's death; before that event he had paid one-half and Folsgraf the other half.

The benefit certificate was executed and issued in the State of Illinois. The provision of the Illinois statute applicable to this case is section 1 of chapter 73 of Hurd's Revised Statutes of 1903, and reads as follows:

"Payment of death indemnities shall only be paid to the families, heirs, blood relations, affianced husband or affianced wife of, or persons dependent upon the member; provided that a member having no wife or children living may, with the consent of the society, make a charitable institution his beneficiary."

The by-laws of the complainant applicable to this case are as follows:

"SEC. 191. Each certificate shall be made payable for the benefit of such member or members of the applicant's family or for such person or persons dependent upon him, as he may designate by name.

" SEC. 192. Should a member die without designating a beneficiary, or should the designated beneficiary die or prove to be an unlawful one, or should more than one person claim the same benefit, then the claimants for the benefit shall be recognized in the following order and no other:    (1) Wife or husband; (2) children; (3) mother; (4) father; (5) brothers and sisters who are minors; and (6) brothers and sisters who are of age."

The benefit certificate provides that all the laws of the order are made a part of the certificate, and that the rights of the beneficiary shall be determined by the laws of the order in force on the day of the death of the member.

The lower court, after hearing the proofs and arguments of counsel, made a decree determining that the defendant Ducheney was entitled to the entire fund; and, the defendant Dewey having died, his administrator prosecutes this appeal to this court.

The law is well settled that no person who is not of the class for whose benefit the association was authorized can be a beneficiary.    The defendant Dewey, therefore, although named as the beneficiary in the benefit certificate, was not entitled to receive the fund, unless he belonged to the authorized class.    His counsel claim that he did belong to such class, because he was a member of the applicant's family, and cite in support of their contention: *Carmichael* v. *Benefit Ass'n,* 51 Mich. 494; *Simcoke* v. *Grand Lodge A. O. U. W.,* 84 Iowa, 383 (15 L. R. A. 114); *Spear* v. *Robinson,* 29 Me. 531; *Klotz* v. *Klotz,* 15 Ky. Law Rep. 183; *Folmer's Appeal,* 87 Pa. 133; *Danielson* v. *Wilson,* 73 Ill. App. 287; *Carpenter* v. *Insurance Co.,* 161 Pa. 9 (23 L. R. A. 571).    These authorities hold that the term " family," in such statutes as the one under consideration, is an expression of great flexibility.

" It may mean the husband and wife having no children and living alone together, or it may mean children, or wife and children, or blood relatives or any group constituting a distinct domestic or social body." *Carmichael* v. *Benefit Ass'n,* supra.

It may apply to blood relatives, even though living apart from the applicant and having families of their own. It may apply to those who are neither relatives by consanguinity or affinity, provided they are of the household of the applicant and maintaining the relations usual in families united by the ties of blood. Such was the *Carmichael Case* above cited. It may well be held that blood relationship makes one a member of the family having the common blood, regardless of his actual relations to the family and whether a member of the particular domestic circle or not, although there is high authority to the contrary. *Elsey* v. *Relief Ass'n*, 142 Mass. 224. But it would be going to an unwarrantable extreme to hold that a relative by marriage becomes a member of the family when not a member of the household nor maintaining the usual family relations. The *Carmichael Case* is not authority for such a holding. Other decisions of this court are opposed to it: *Supreme Lodge Knights of Honor* v. *Nairn*, 60 Mich. 44; *Michigan Mut. Benefit Ass'n* v. *Rolfe*, 76 Mich. 146; *Cowin* v. *Hurst*, 124 Mich. 545. At no time after the marriage of his stepdaughter in 1897 down to the time of her death was the defendant Dewey a member of the same household, except in 1902 when, according to his own testimony:

"I continued to live at 166 Apple street until Mrs. Dewey died. I remained there *and boarded with Folsgraf and his wife* about a month after she died, and then took rooms in the Landreth block."

Under such circumstances, we think the court below correctly held that Mr. Dewey was not a member of Mrs. Folsgraf's family when either of the certificates was issued.

Counsel for appellant further contend that the association admitted its liability and was willing to pay the fund to Dewey, and that Ducheney had no such legal interest in the fund as to authorize his interference, since only the company can complain of a want of insurable interest, citing: *Standard Life & Accident Ins. Co.* v. *Catlin*, 106 Mich. 138; *Hosmer* v. *Welch*, 107 Mich. 470; *Cowin*

.v. *Hurst,* 124 Mich. 545; *Supreme Tent K. O. T. M.* v. *McAllister,* 132 Mich. 69; *Johnson* v. *Van Epps,* 110 Ill. 551, 562; *John Hancock Mut. Life-Ins. Co.* v. *Lawder,* 22 R. I. 416. If the contract in question were void as a wager policy, and when construed with the laws of the association simply provided for payment to the beneficiary named in the policy and no one else, we should concur in the proposition that the defendant Ducheney had no standing in the case, and that, if the company was willing to pay under its agreement, no one else could complain. But by the express provisions of this policy: "The rights of the above-named beneficiary or beneficiaries shall be determined by the laws of the order in force on the day of the death of the member," etc. The laws of the order in force at the time of Mrs. Ducheney's death provided, amongst other things, as follows:

" SEC. 192. Should a member die without designating a beneficiary, or should the designated beneficiary die *or prove to be an unlawful one,* or should more than one person claim the same benefit, then the claimants for the benefit shall be recognized in the following order and no other: (1) Wife or husband; (2) children; (3) mother," etc.

This by-law was a part of the contract of insurance as much as though its terms were written into the certificate. The policy provided in legal effect that the sum of $1,000 should be paid to Theodore B. Dewey; but, in case it should be determined that the money could not lawfully be paid to him, then it should be paid to Joseph Ducheney, her husband. The defendant Ducheney has a direct interest in this contract, which he is entitled to enforce.

The decree is affirmed.

CARPENTER, C. J., and MCALVAY, GRANT, and MOORE, JJ., concurred.