GRAND LODGE OF THE ANCIENT ORDER OF UNITED WORKMEN OF THE STATE OF MICHIGAN v. BEATH.

LIFE INSURANCE—MUTUAL BENEFIT CERTIFICATE — BENEFICIARY— TRUSTS—ESTOPPEL.

> The holder of a mutual benefit certificate designated as beneficiary a woman who was willing to care for him in his last illness, falsely describing her as his cousin, and the assured, the beneficiary, and a third person, the order assenting, entered into an agreement under which the woman was to receive a certain sum out of the proceeds of the certificate, the third person to be repaid his advancements for medical attendance and keeping the certificate in force, remainder to assured's son. Subsequently assured and the woman were married and a new certificate issued naming her as wife. *Held*, her designation as beneficiary in the last certificate was valid, but that she could not repudiate the trust agreement, it being one proper for assured to make and there being no fraud. OSTRANDER and McALVAY, JJ., dissenting.

Cross-appeals from Wayne; Brooke, J. Submitted April 15, 1907. (Docket No. 84.) Decided January 31, 1908.

Bill of interpleader by the Grand Lodge of the Ancient Order of United Workmen of the State of Michigan against Duncan C. Beath, Charles Neilands, and Sarah Neilands to determine title to the proceeds of a benefit certificate. From a decree awarding portions of the fund to defendants Beath and Sarah, and the balance to defendant Charles, defendants Charles and Sarah appeal. Affirmed.

*Firmon Lush* (*Washington I. Robinson*, of counsel), for appellant Sarah.

*Hiram L. Rice* (*William E. Fenwick*, of counsel), for appellant Charles.

*Duncan C. Beath*, in pro. per.

150 MICH.—42.

OSTRANDER, J. Complainant was organized under the provisions of 2 Comp. Laws, §§ 8047–8057. It paid into court the sum of $2,000, the amount due upon a benefit certificate issued to Abraham Neilands, who died October 5, 1905. Defendants, claimants of the fund, interpleaded, and from a decree distributing the money, the son and the widow of the deceased have appealed.

In the certificate first issued to Abraham, his wife Jane was named as beneficiary. She died in 1898. A new certificate was issued, naming the son, Charles, as beneficiary. To this certificate after it was issued Abraham attached a writing, by the terms of which he professed himself indebted to Sarah Cumming in the sum of $500, which sum he desired paid out of the proceeds of the certificate by his son, the beneficiary. Later this second certificate was canceled and a third one issued, in which Sarah Cumming was named as beneficiary, her relation to Abraham being therein falsely stated to be that of cousin. Pending the issue of this certificate, after consulting with defendant Beath, an arrangement for the purpose of securing payment of $500 to Sarah was entered into by Abraham, Sarah, and Beath. Two instruments were drawn and executed, one by Sarah and Beath, in which she assigned and set over to Beath all her right, title, and interest in the certificate and fund and empowered Beath to collect and receipt for the money, in consideration that he pay to her out of the fund $500; one by Abraham and Beath, by the terms of which Abraham appointed his attorney, Beath, to dispose of the money coming to his hands by paying his, Abraham's, just debts, etc., by purchasing a gown for a person named, and by keeping the remainder for one year in trust for the son, Charles, leaving it discretionary with said attorney to pay the balance to Charles if he was regarded as worthy, otherwise to pay it to Sarah Cumming. He also gave to Beath a paper in form a demand note for $1,000, payable out of said certificate. Discovering that she had been represented to be a cousin, Sarah called the attention of Beath to the matter, told

him she was not a cousin nor in any way related. Upon the suggestion of some one, Abraham and Sarah were thereafter married. When the ceremony was performed, Abraham was sick in bed, the marriage was never consummated, and, a few weeks later, Abraham died. Meantime, after the marriage, a new certificate had been applied for and had issued, naming Sarah (Cumming) Neilands, wife, as beneficiary. It is admitted that the member had the right to change the beneficiary as often as he pleased. It seems to be assumed that because of a limitation upon this power of appointment, Sarah Cumming was not a proper beneficiary. The court below sustained the assignment and the trust and ordered the balance of the money, some $361, paid to the son. Both the wife and the son claim all of the fund. The case is a proper one for interpleader, since both the wife and the son are within the statute classes and if no later proper change of beneficiary was made the last valid designation of a beneficiary is found in the certificate in which the son is so named.

The son attacks the validity of the marriage. The apparent purpose of the marriage was to insure the payment of the sum of $500 to Sarah. Whatever the purpose, it was a valid marriage, and Sarah Cumming Neilands became, what Sarah Cumming was not, a lawful beneficiary. The last certificate, issued after the marriage, in which she was named as sole beneficiary, entitled her to receive and to keep the entire fund unless she is bound by the arrangement to which she, her husband, and defendant Beath were parties. It is her contention that the said trust arrangement was made with reference to the certificate then to be issued to Sarah Cumming, cousin, and was abrogated by the subsequent issuing of a new certificate to herself as wife. She insists, further, that a creditor could not be a beneficiary, and that he could not be, indirectly, made such by directions of the insured concerning the disposition of the fund, or by the agreement

of the beneficiary to dispose of the fund in a particular way.

I have not found the articles of association or the by-laws of complainant or the certificate in the record. Omissions of this nature may and sometimes do lead to what appears to be a curious condition in the law. It is at least a reasonable inference that the by-law set out in the opinion in *Grand Lodge A. O. U. W.* v. *McKay*, 149 Mich. 90, was in force when the certificate in this case matured by the death of Mr. Neilands. The statute powers of complainant are to provide relief of the families and heirs of deceased members. By amendment to the statute, made in 1899 (Act No. 130), a section is added which is here set out:

"SEC. 12. The money or other benefit, relief, aid or sick benefit fund to be paid, provided or rendered by any corporation formed in pursuance of this act, shall not be liable to attachment, garnishment or other process and shall not be seized, taken, appropriated or applied by any legal or equitable process or by operation of law, to pay any debt or liability of the deceased member, or of any certificate holder, or of any beneficiary named in any certificate, or of any person who may have any rights thereunder."

Trustee Beath and those he represents are none of them, excepting only the son, of the statute classes. The trustee cites and relies upon *Woodruff* v. *Tilman*, 112 Mich. 188; *Cowin* v. *Hurst*, 124 Mich. 545, and *Great Camp K. O. T. M. M.* v. *Deem*, 143 Mich. 652, upon the authority of which cases he contends the trust arrangement, unless rescinded, was enforceable. It is clear that *Great Camp K. O. T. M. M.* v. *Deem* is not in point.

Generally, the member of a benefit society has no property in the benefit but has the power to designate a beneficiary. Most often this power of appointment is limited, in the statute or in the articles of association or the by-laws of the association. Whether, the statute containing no prohibitory or restrictive words, such a limitation is to be found in the statute statement of the general purposes

of the organization, is a question of construction of the language employed. It is held in Massachusetts that the statement of general purposes is such a limitation. *Supreme Council Am. L. of H.* v. *Perry*, 140 Mass. 580; *Daniels* v. *Pratt*, 143 Mass. 221. See, also, *Supreme Lodge K. of H.* v. *Nairn*, 60 Mich. 44. An opposed conclusion is reached in Pennsylvania. *Maneely* v. *Knights of Birmingham*, 115 Pa. 305. See, generally, 1 Bacon on Benefit Societies and Life Insurance, §§ 236–265. I think it cannot be said that *Woodruff* v. *Tilman*, supra, decided the question here presented. And see *Michigan Mut. Benefit Ass'n* v. *Rolfe*, 76 Mich. 146; *Wolf* v. *Grand Lodge*, 102 Mich. 23. In *Cowin* v. *Hurst*, supra, a legal beneficiary was designated. At the instance of the member, she entered into an agreement to pay the entire proceeds to one who could not be a beneficiary and who, unless he could be treated as a creditor, does not appear to have had any insurable interest in the life of the member. The beneficiary was compelled, at the suit of this third person, to turn over the proceeds of the certificate which had been paid to her by the association. It is said in the opinion that the only persons concerned in the validity of the transaction were the complainant and the association and if the association was willing to waive its defense and pay the money to the beneficiary, she, the beneficiary, could not be heard to say that the disposition of the money in her hands was one the association had no right to provide for. This argument seems to me to be faulty for the reason that the contract of indemnity was valid, the association could do nothing but pay the money to the beneficiary named in the certificate, and in a suit brought by her for the money could not have set up, in its defense, the fact that she proposed to devote the money to a particular purpose. If it were otherwise, the value of such a trust agreement would depend upon whether it had come to the knowledge of the association, and if it had, whether it considered it best to contest the demand of the beneficiary. To protect itself and the business it was organized to

carry on, it would be obliged to require from each beneficiary of a deceased member a denial that any agreement existed to dispose of the fund for a purpose not recognized by the statute.    While the facts in *Cowin* v. *Hurst* are somewhat peculiar, I think the decision is authority for the proposition that where beneficiaries of a society are limited to the families and blood relatives of a member, such member may, by designating a proper and consenting beneficiary, himself dispose of the benefits to whomsoever he pleases, whether the actual beneficiary has or has not an insurable interest in the member's life.    But I am also of opinion that the proposition stated ought not to be the law.    The notion that a proper beneficiary may not keep the fund which the association is bound by its contract to pay him, because he has taken it in trust for one who could not be a beneficiary, ought not to be controlling, because it is in effect mischievous and the contract rights of those who could not be beneficiaries but who claim as distributees should be held to be subservient to the enforcement of a rule of sound public policy.    It has been pretty uniformly held that the right of a member in the benefit fund is not property, that the right of the beneficiary is not vested but inchoate, and that, in the absence of restrictions, the right of a member to change the beneficiary at pleasure is clear.    *Union Mutual Ass'n* v. *Montgomery*, 70 Mich. 587.    Neither has any assignable interest in the fund.    It is illogical to hold that a beneficial society may accumulate and pay out funds only to the families or heirs of deceased members, to hold that one not of the statute classes may not be named as a beneficiary of such a fund in the certificate. *Grand Lodge A. O. U. W.* v. *McKay*, supra; *Supreme Lodge Order of Mutual Protection* v. *Dewey*, 142 Mich. 666 (3 L. R. A. [N. S.] 334); and to also hold that a proper beneficiary may be bound by the direction of the member, and his own consent, to pay the money to whomsoever the member may designate.    To find such a trust arrangement valid and enforceable is to deny to the mem-

ber the right to change his beneficiary; if not, then it is evident that the trust may be avoided by a change of beneficiary, in which manner a convenient way to perpetrate fraud is established.   The member of such an organization is as much bound by the statute as is the aggregate of membership.   It is unlawful for him to designate as beneficiary a person not entitled to relief.   Every one is supposed to know that he may not do so.   But if he does do so, and the courts affirm his action by compelling the beneficiary to carry out his wishes, attorneys cannot be blamed for advising that the statute and rules of the association may be in this way circumvented.   In so far as *Cowin* v. *Hurst*, supra, is opposed to these views, it should not, in my judgment, be followed.

In the opinion of Chief Justice GRANT, it is said that the trust arrangement ought to be enforced because it was dictated by the common instincts of humanity, and because repudiation of the arrangement by the widow is repulsive to common honesty; an argument of some plausibility and one which in a proper case would be of force.   It entirely overlooks the essential propositions, which I again repeat, that the fund wherewith to pay the promised indemnity is acquired by an assessment upon members of the association whose membership depends upon paying such assessments and who are, as the insured in this case was, bound to contribute and are organized and have agreed to contribute and have a legal status only for the purpose of contributing "to provide for the relief of the families and heirs of deceased members of said fraternity;" that until the death of a member the beneficiary has no vested or assignable interest in the fund, the member no right except to name his beneficiary within the statute classes.   It is for this reason that corporations like the complainant are not considered as engaged in the business of life insurance, nor subject to the provisions of the statutes relating to life insurance or mutual benefit companies, associations, or corporations.   2 Comp. Laws, § 8056.   It is for this reason that the legis-

lature, in 1899 (Act No. 130), added to existing provisions the one already herein set out.   See *Hunt* v. *Branch Circuit Judge*, 141 Mich. 423.   It is not necessary to read into the charter any implied prohibition.   The prohibition to be enforced here is express.   Traffic in such certificates, or in the fund which upon the death of a member is contributed by those surviving him, is forbidden by the statute, and if continued it will be because the courts approve.

Some effort was made by Abraham and Sarah after their marriage to rescind or recall the assignment and the trust arrangement.   The evidence requires us to find the last designation of a beneficiary a proper one.   By this is meant that the wife of the member was a proper beneficiary and that the designation was intelligently made. Either the member had the right to make this change or else he lost it when he made the trust agreement.   It is true he named as beneficiary a party to the trust agreement.   But when she made the agreement she was not, in fact, a lawful beneficiary.   By the marriage she acquired the status of a lawful beneficiary.   And he might, of right, unless that agreement prevented, have named his son.   If he had named his son, would it be contended that the trust agreement could have been enforced ?  I think the conclusion I have reached is supported by the facts just stated, that is to say, the trust agreement was not made by a person who was then named or could lawfully have been named as a beneficiary.   I prefer, however, to rest my conclusion upon the broader ground that the arrangement was an attempt to accomplish by indirection what the law will not permit to be directly accomplished.   For reasons which have been given, it should be held that this beneficiary is entitled to the fund discharged of all obligations attempted to be created by the so-called trust arrangement.

The decree of the circuit court should be reversed, and a decree entered in this court giving the entire fund to the appellant Sarah Neilands.

Because of the form of the action and the responsibility

of the prevailing party for the apparent fiduciary character of defendant Beath and his relation to the fund, no costs should be awarded.

MCALVAY, J., concurred with OSTRANDER, J.

GRANT, C. J.   The facts in this case are substantially parallel to those in *Woodruff* v. *Tilman*, 112 Mich. 188, and *Cowin* v. *Hurst*, 124 Mich. 545.   The decree of the court below is in accord with those cases and others which will be found cited therein.   To reverse this case would be to overrule those.   The sound principle upon which those cases rest is that one will not be permitted to repudiate his trust and keep the trust funds when, with a full knowledge of all the facts, he voluntarily agreed to, and accepted, the terms of the trust, or in other words, one cannot· obtain possession of funds committed to his care by a trust agreement and then plead the illegality of the agreement.

This is not a case for the application of the rule that parties who, having voluntarily entered into a fraudulent agreement, will be left to lie in the bed they have made. In such case the law affords no remedy and equity affords no relief.   There is no claim of fraud in this case.   The arrangement was a very proper one for the deceased to make.   He had no property or means of support.   He could not even pay his premiums.   He could not keep his policy alive unless he could borrow money upon it.   Unless he could in some way obtain the benefit of this insurance, his only hope of relief was death or the poorhouse. Mrs. Cumming had taken care of his wife during her last illness, for which he very properly wished to compensate her.   He was very ill, and she was willing to take care of him in his last sickness.   It was necessary to procure medical care and to provide for his support.   It was also natural that he should desire to make provisions for his funeral expenses.   For this purpose this arrangement was entered into between Beath, Mr. Neilands, and Mrs. Cumming.   Not only that, but the complainant's local lodge

assented to it.   Mr. Beath placed the matter before that
lodge; a committee was appointed who investigated and
reported, after which the lodge kept his policy alive by
giving credit for his monthly dues on the promise of Mr.
Beath to pay for them under the arrangement.   The
arrangement was one dictated by the common instincts of
humanity.   She was made a beneficiary, and subsequently
married him for the sole purpose of carrying out the
arrangement.   Her attempted repudiation of the trust is
repulsive to common honesty.

The arrangement is not contrary to public policy.   It is
not expressly prohibited by complainant's charter.   I
think the language of section 8049, 2 Comp. Laws, is of
some significance in this connection.   It gives power to
the corporation—

"To create, hold and disburse beneficiary, relief, gen-
eral, or other funds for the benefit of sick or disabled
members:   *   *   *   *   *   *   *   *   *   *   *   *  *   *   *   *   Provided, that nothing in this sec-
tion shall be construed as giving to a grand lodge power
to make assessments for the purpose of paying sick ben-
efits."

The old man was sick.   The company, under this sec-
tion, could use funds to alleviate the suffering of a sick
member, provided they could do so without assessing the
members.   The company assented to the humane arrange-
ment, and in this way provided funds without any injury
to the corporation or making any assessment.   I do not
think that courts should read into the charter an implied
prohibition.   The legislature may amend the charter by
making such arrangements absolutely void, and the mat-
ter, in my judgment, should be left to the legislature.
Some other courts seem to have reached a different con-
clusion, but I do not think their reasoning is so convinc-
ing as to require this court to overrule its former decisions.

I am for affirmance of the decree.

BLAIR, MONTGOMERY, CARPENTER, and MOORE, JJ.,
concurred with GRANT, C. J.

HOOKER, J.  I concur in the result reached by Chief Justice GRANT, upon the authority of *Cowin* v. *Hurst*, 124 Mich. 545, inasmuch as the bill filed in the case is for interpleader.   As said in *Cowin* v. *Hurst*, were the complainant denying the right of Mr. Beath, a different question would be presented.  This decision does not in my opinion confer the power upon members of mutual benefit societies to circumvent the law, for it must always be dependent upon the acquiescence of the company, if the intimation of Chief Justice GRANT in that case, that the company may successfully dispute the right of a beneficiary, or cestui que trust, who has not an insurable interest, is the law.   If the rule laid down in that and other cases cited, shall be found to be in contravention of a sound public policy, the legislature can easily change it, which I think a method preferable to the overturning of a rule that seems well established.

The decree should be affirmed.