## KNIGHTS OF THE MACCABEES OF THE WORLD v. BROWN.

1. INSURANCE—FRATERNAL SOCIETIES—DIVORCE.

Complainant, an insurance and fraternal order, brought an interpleader suit against the divorced wife and widow of a deceased member to determine their respective rights under a benefit certificate originally issued to the divorced wife as beneficiary during coverture. The first wife paid part of the assessments. After the issuance of the certificate complainant adopted a by-law providing that the benefit should be paid in case of divorce as if the beneficiary designated had died. Though the insured had not agreed in his application to be governed by after enacted by-laws, he had so stipulated in an application for reinstatement filed about five years after the policy was executed. Act No. 104, Pub. Acts 1869, provided when the insurance was purchased that policies should be payable only to the husband, wife, family, heirs, creditors or assigns of any member. The beneficiary was never changed by insured. Complainant did not deny liability. *Held*, that the question of liability to the second wife was a proper issue for determination, and that she was entitled to the fund.

2. SAME—VESTED RIGHT.
>   Without a contract to that effect with the husband, the divorced wife acquired no vested right in the fund by paying the premium.

Appeal from Wayne; Hosmer, J. Submitted April 12, 1915. (Docket No. 38.) Decided June 7, 1915.

Bill by Knights of the Maccabees of the World against Gitty Brown and others for an order of interpleader. From a decree for defendant Elizabeth Brown, Gitty Brown appeals. Affirmed.

*Clarence G. Hill,* for defendant Gitty Brown.

*Terry & Parsons (Donnelly, Lyster, Brennan & Munro,* of counsel), for defendant Elizabeth Brown.

OSTRANDER, J. Complainant issued its certificate to William Brown May 20, 1887, for $2,000, the named beneficiary being Gitty Brown, wife. Thereupon William became a member of Petrolia Tent No. 10, located at Petrolia, Canada. In March, 1910, Gitty Brown secured a divorce from William, the decree providing for payment to her of $50 monthly as alimony. No other property was secured by the wife in this proceeding. William paid the alimony during his life. In April, 1910, William Brown married Elizabeth Phelps, and in April, 1913, he died, leaving surviving him Elizabeth, his widow, and two children, Lettie and Lillian, by his first wife. So far as the beneficiary is concerned, the original certificate was never changed. In 1904, complainant adopted and made a part of its laws section 348, which reads:

"Divorce of Beneficiary. In the event of the divorce of a member from wife or husband, who is named as beneficiary in the life benefit certificate of the member, if no other designation has been made, the benefit shall be paid the same as though the designated beneficiary had died before the member and no new designation had been made. In no such case

shall the designation of widow or widower, as provided in the preceding section, be taken to mean the divorced wife or husband of such deceased member, but shall mean the legal wife or husband, if any, of such member, at the time of his death."

Testimony was introduced tending to prove that in 1892 William was suspended for nonpayment of dues, and on May 4, 1892, made application for reinstatement, which application was approved May 8, 1892, a certificate of good health being required and given. In the application for reinsurance, William Brown said:

"This application and the constitution and laws of the supreme tent now in force, or that may hereafter be adopted, are made the sole basis of the contract between myself and the supreme tent, and for myself and my beneficiary or beneficiaries agree to conform and be governed thereby."

The original application for insurance made no reference to existing laws or laws thereafter adopted. There was testimony also that Gitty Brown paid assessments to the insurer, and that but for her action in this respect her husband would not have continued to be a member of the order. Also there was testimony to the effect that in the divorce proceedings, and later in an attempt to open the decree of divorce, she specially asserted a right to the certificate.

A law of the complainant in force when the certificate matured (section 347) provided for payment in the case of the death of all beneficiaries, distributing the fund to the widow or widower if living, if not, then to the children, if none, to dependents, etc. Act No. 104, Pub. Acts 1869, and its amendments (Act No. 192, Pub. Acts 1883), in force when the certificate in question was issued, provided:

"Such corporation or association shall only issue certificates or policies payable to the husband, wife, family, heirs, creditors or assigns of any member."

Act No. 226, Pub. Acts 1901, in force when William Brown died, somewhat enlarged the list of proper beneficiaries by adding, "mother, father, sister, brother, or blood relatives to the fourth degree of the member," and if the member had no such relatives then he might designate any other person, or his estate, as beneficiary. Both the divorced wife and the surviving wife claimed the fund, and, the complainant having filed a bill of interpleader, they were ordered to and did interplead. Later the children were brought in by amendment of the bill, and they asked to have the fund paid to them. A decree was entered, awarding the fund to Elizabeth Brown. From this decree Gitty Brown has appealed.

The argument in favor of appellant which appears to have force and which must be noticed is that by the terms of the certificate, admittedly valid when it was issued, the fund is payable to her, and the complainant does not deny liability. In this connection it is said that Elizabeth Brown, a stranger to the contract, cannot urge in her own behalf any application of the laws of the complainant association. It is urged, also, that by the payment of assessments previous to her divorce, and previous to the time when the laws referred to were passed, she acquired a vested interest in the policy.

The appellee, Elizabeth Brown, defends the positions:

*First,* that appellant was not, after her divorce, one of the class for whose benefit the association was authorized to issue policies, citing and relying upon *Order of Mutual Protection* v. *Dewey,* 142 Mich. 666 (106 N. W. 140, 3 L. R. A. [N. S.] 334, 113 Am. St. Rep. 596, 7 Am. & Eng. Ann. Cas. 681); *Schiller-Bund* v. *Knack,* 184 Mich. 95 (150 N. W. 337).

*Second,* that the by-laws are a part of the contract, and that they were so recognized by the insured when he made application for and was permitted reinstatement after being suspended.

What is the effect, in the particular case, of the admission of liability on the part of the complainant? It must be admitted that upon this point there is some apparent confusion in our own decisions. As early as *Mutual Benefit Ass'n* v. *Hoyt,* 46 Mich. 473 (9 N. W. 497), it was held that a policy of insurance, payable to one not of the class entitled to be beneficiaries, may be defended against by the insurer, not in its own interest, there being no fraud perpetrated upon it, but in the public interest. In *Mutual Benefit Ass'n* v. *Rolfe,* 76 Mich. 146 (42 N. W. 1094), the doctrine of the *Hoyt Case* is reaffirmed, and it is further held that what public policy will not sanction if done directly cannot be enforced when accomplished by indirection. In the *Hoyt Case* the insurer was a party to the action; in the *Rolfe Case* the rival claimants were required to interplead. In *Standard Life, etc., Insurance Co.* v. *Catlin,* 106 Mich. 138 (63 N. W. 897), the insurer admitted liability by paying the money into court. The contest was between the beneficiary who, it was claimed, had no insurable interest in the life of the insured and the personal· representative of the deceased insured. It was said:

"We think, as between the complainant [the insurance company] and Nettie Gail Catlin, the question is not here. The company concedes its liability on the contract, and has paid the money into court. If the question were open, it is difficult to see how a determination that the policy is a wager policy would be fruitful in results to the heirs of the deceased."

It is pointed out that Nettie Gail Catlin, the beneficiary, survived the insured, and was living; that by its terms the policy was payable to the representatives of the deceased only in the event of the death of Nettie Gail Catlin; that if the contention of the representative was admitted, the policy must be held to be void as a wager policy; and that the decree awarding the fund to the beneficiary should be affirm-

ed.   In *Cowin* v. *Hurst,* 124 Mich. 545  (83 N. W. 274,
83 Am. St. Rep. 344), the fund was permitted to be
paid by indirection to one who could not have been
a beneficiary under the law.   It was  said that the
insurer was not complaining, and that if it was, a
different question would arise.   This case was con-
sidered in *Grand Lodge A. O. U. W.* v. *Beath,* 150
Mich. 657  (114 N. W. 662), in which case a majority
of the court reaffirmed the  doctrine  it announced.
Finally, in *Grand Lodge A. O. U. W.* v. *Brown,* 160
Mich. 437, at page 448  (125 N. W. 400, at page 404),
an interpleader case, it is said, considering the con-
tention that a change of beneficiaries was not prop-
erly effected, that the appellant  could not complain
"since the complainant has admitted its liability, and
the complainant order is the only party that has the
right to raise the question" (citing   *Standard  Life,
etc., Insurance Co.* v. *Catlin, supra; Hosmer* v. *Welch,*
107 Mich. 470  (65 N. W. 280, 67 N. W. 504) ; *Order
of Mutual Protection* v. *Dewey, supra;. Cowin* v.
*Hurst, supra*), and upon  the question  whether the
association had power to designate certain benefici-
aries, it is said that if it had not the power, the com-
plainant order, only, could raise the question  (citing,
further, *Great Camp K. O. T. M.* v. *Deem,* 143 Mich.
652  (107 N. W. 447) ;  *Grand Lodge A. O. U. W.* v.
*Beath, supra*).   The *Deem Case* does not appear to
involve the question beyond this, that the beneficiary
named in the certificates was not allowed to recover
the fund, but only to receive compensation out of it,
upon the theory that a change of beneficiaries from the
wife of the insured to the claimant beneficiary was
made for the purpose of  securing  to her compensa-
tion for money loaned to, or advanced for, the in-
sured.   There was involved no question of a proper
beneficiary, but only the effect to be given a change
of beneficiaries.   Some of these decisions were urged

upon the court in *Order of Mutual Protection* v. *Dewey*, 142 Mich. 666 (106 N. W. 140, 3 L. R. A. [N. S.] 334, 113 Am. St. Rep. 596, 7 Am. & Eng. Ann. Cas. 681), which was a case of interpleader, and the status of a named beneficiary, under the law, was involved. It was said:

"If the contract in question were void as a wager policy, and when construed with the laws of the association simply provided for payment to the beneficiary named in the policy and no one else, we should concur in the proposition that the defendant Ducheney had no standing in the case, and that, if the company was willing to pay under its agreement, no one else could complain. But by the express provisions of this policy: 'The rights of the above-named beneficiary or beneficiaries shall be determined by the laws of the order in force on the day of the death of the member,' etc. The laws of the order in force at the time of Mrs. Ducheney's death provided, amongst other things, as follows:

" 'SEC. 192. Should a member die without designating a beneficiary, or should the designated beneficiary die *or prove to be an unlawful one,* or should more than one person claim the same benefit, then the claimants for the benefit shall be recognized in the following order and no other: (1) Wife or husband; (2) children; (3) mother,' etc.

"This by-law was a part of the contract of insurance as much as though its terms were written into the certificate. The policy provided in legal effect that the sum of $1,000 should be paid to Theodore B. Dewey; but in case it should be determined that the money could not lawfully be paid to him, then it should be paid to Joseph Ducheney, her husband. The defendant Ducheney has a direct interest in this contract, which he is entitled to enforce."

This distinction would not dispose of the controversy which was before the court in *Grand Lodge A. O. U. W.* v. *Beath, supra,* or the one in *Cowin* v. *Hurst, supra,* nor perhaps in any case in which mere regularity in naming, or in changing, beneficiaries was involved, but it is a distinction which, if ad-

mitted, warrants, and indeed requires, in cases where the liability, of the insurer to pay the fund to some one, if not to the beneficiary, exists, the designation by the court of the rightful beneficiary. In such cases it is unimportant that the insurer does not deny liability.

The reasoning in the *Dewey Case* is persuasive, and in my opinion the point referred to was correctly ruled. Kept in mind, much apparent confusion in the decisions disappears. Applied in the instant case, it required consideration of the contention of Elizabeth Brown that, although she is named as beneficiary in the certificate, Gitty Brown has no right to the fund.

It is clear that she has no right under the laws of complainant because she is not the widow of William Brown and has not for years sustained with him a relation which would allow her to be a beneficiary. The proof is wholly insufficient to show that she acquired a vested interest in the certificate or the fund. See *Schiller-Bund* v. *Knack, supra.* She was a proper beneficiary when the certificate was issued, and the insured, her then husband, although he might have done so, did not appoint any one else to take the fund. Her right, therefore, depends upon the force and effect to be given to the law of the complainant and the changed relations resulting from the divorce. The reasonableness of the law is not questioned. Whether, having been adopted after the contract was made, it could affect the insured member and so affect the beneficiary named by him, is the real question presented for decision.

There is nothing in the testimony which discloses, with any certainty, the intention of the insured, beyond the fact that he did not make a change of beneficiaries. His neglect to make a change may be explained, of course, by saying that he knew that a change had been in fact made by the law, the divorce,

and his subsequent marriage to the appellee, and that he was therefore contented. As a general rule, waiver of a default by a party to a contract who has the right to insist upon it revives and continues the contract according to its terms. New terms are not added to it by implication. The testimony satisfies me that William Brown became in default, and as a member was entitled to be relieved from it upon terms. He was relieved, upon making a new application and furnishing a certificate of good health. In his application he expressly agreed to be bound by the laws of the order and by laws thereafter adopted. Gitty Brown having no vested interest in the certificate—indeed, she could not herself have removed the default—cannot be heard to say that the new arrangement, assuming that in this respect it was a new arrangement, did not bind her. I find no reason for holding that William Brown was not thereafter bound by the old and new laws of the complainant.

It results that the decree was right, and should be and is affirmed, with costs to appellee.

BROOKE, C. J., and McALVAY, KUHN, STONE, BIRD, MOORE, and STEERE, JJ., concurred.