# JOVICH v. NATIONAL CROATIAN SOCIETY OF THE UNITED STATES OF AMERICA ET AL.

(No. 2076; January 24, 1939; 86 Pac. (2d) 729)

506

For the defendant and appellant, the cause was submitted on the briefs of *Joseph H. Galicich* of Rock Springs.

For the plaintiff and respondent, the cause was submitted on the briefs of *T. S. Taliaferro, Jr.* and *A. L. Taliaferro* of Rock Springs.

RINER, Chief Justice.

The question presented in this case is which party involved in the litigation is entitled to the proceeds of two policies of fraternal benefit society insurance. The facts material to be considered are as follows:

During his lifetime one Jure or George Sulenta, a resident of Rock Springs, Wyoming, formerly a native of the country of Jugoslavia in Europe, procured and held two certificates of membership in the National Croatian Society of the United States of America, subsequently known as or merged in the Croatian Frater-

nal Union of America, a Pennsylvania corporation, whereby he became entitled to "participate in the mortuary disability fund of said society," the certificates reciting that certain sums were upon the death of the holder of these certificates to be paid on account of his funeral expenses and the balance should be paid to his brother, one Grgur or Grgo Sulenta, who was named as the original beneficiary therein. One of these certificates was numbered 20,700, while the other was given the number 17,039. At the time of Jure's death the certificate last mentioned appears to have become lost. Shortly before and during the month preceding his decease, which occurred about December 1st or 2nd, 1932, Jure not being able to meet the dues payable on these membership certificates, undertook to change the beneficiary from his brother, as aforesaid, to one Andrija Sulenta. The real controversy in the case lies between Matt J. Jovich or Yovich, as administrator of the estate of the insured, and Andrija Sulenta.

Jovich, under date of October 12, 1933, seems to have been given by Grgur or Grgo Sulenta, the original beneficiary named in the policies and who lives in Jugoslavia, a general power of attorney to collect the money due him under the certificates aforesaid as the beneficiary thereof.

On February 6, 1934, Jovich was also appointed by the district court of Sweetwater County, Wyoming, as the administrator of the estate of Jure or George Sulenta, deceased, and duly qualified as such officer.

May 15, 1934, Jovich, as plaintiff, brought an action in the district court above mentioned against the National Croatian Society of the United States of America, also known as Croatian Fraternal Union of America, Andrija Sulenta, and Grgur Sulenta, alias Grgo Sulenta, as defendants, setting out the facts hereinbefore recited and alleging among other things

that "under the law, by-laws, constitution, rules and regulations" of the fraternal societies aforesaid, the defendant Andrija Sulenta was "incapable of being a beneficiary under any form of certificate issued by the said defendant corporations" and that the said Andrija was not a relative of the decendent within the "fourth degree."

Grgur Sulenta, by his attorney-in-fact, Matt J. Jovich, filed an answer in the cause admitting the averments in the petition. The two corporate defendants having paid the funeral expenses of the deceased, filed an answer admitting their liability under the certificates aforesaid in the sum of $980.82, concluding their pleading thus:

"which said sum the said defendants offer to pay into court to be distributed by the court to such claimants as the court, upon full hearing, shall decide are entitled thereto.

"WHEREFORE, defendants pray that upon payment of said sum of Nine Hundred Eighty and 82/100 ($980.82) Dollars into court, upon the order of the court, that they go hence without day with their costs."

Andrija Sulenta also filed an answer in the case averring that the change in beneficiary to himself in the membership certificates aforesaid, was proper and that he was related to the member of the society, Jure Sulenta, within the degree required by the constitution, by-laws, rules and regulations of the corporate defendants, and that though demanded of them, they "have failed, neglected and refused to pay" the amounts of these certificates to the defendant Andrija Sulenta. The cause was tried to the court sitting without a jury, with the result that the court found generally in favor of the plaintiff Jovich, as administrator of the estate of Jure Sulenta, deceased, and against the defendant Andrija Sulenta; that there was due to him as such

administrator from the corporate defendants the amount admitted to be due as stated in their answer, and that "the evidence fails to show that said Andrija Sulenta was any relation whatever to the deceased member, George Sulenta." Other findings were made which are not necessary to be recited now. Judgment was entered for the amount aforesaid in favor of Jovich, as administrator, and it was adjudged also that the defendant Andrija Sulenta take nothing by his answer. The latter has brought the case here by the direct appeal procedure.

The by-laws of the fraternal society involved contained among others the following provisions:

"Section 249. Every member of the Croation Fraternal Union may name as beneficiaries of his death benefit his blood relatives to the fourth degree, as follows: (a) Legitimate wife or husband; (b) Legitimate children; (c) Parents; (d) Brothers and sisters; (e) Half-brothers and half-sisters; (f) Grandchildren; (g) Grandfather or grandmother; (h) Uncle or Aunt; (i) Nephews or nieces; (j) Other blood relatives to the fourth degree; (k) Father-in-law or mother-in-law; (1) Step-father or step-mother; (m) Step-children; (n) Son-in-law or daughter-in-law; (o) Legally adopted children; (p) Those who are entirely dependent upon a member for food, clothing, maintenance or education, provided that before a person claiming to be a dependent upon a member can be named as beneficiary, the Supreme Office shall be furnished with sufficient proof of dependency before a certificate is issued, and after the death of the member."

"Section 260. If a member, in his application for membership, or in his application for change of beneficiary, falsely states that the persons named as his beneficiaries were related to him, as required by the by-laws, and if at the time of his death it is proven that they were not related to him, then the death benefits shall be paid to his legal heirs."

We have carefully examined the evidence submitted,

as set forth in the record in this case, and it is clear that the court's finding that Andrija Sulenta was not related at all to the member Jure Sulenta was made, to say the least, upon conflicting testimony not necessary to be here reviewed, and certainly with substantial evidence to support it. For example it appears that Andrija Sulenta as a witness for himself admitted on cross-examination that he never claimed any relationship with Jure Sulenta in the country of Jugoslavia before they came to this country, and on direct examination the same witness had already stated that while he considered himself to be a cousin of Jure Sulenta, he was unable to tell whether "it was first or second cousin or the degree of cousin it was," and that the matter never came up until this case arose. Under well known rules applied many times in this court, we must take the trial court's finding that no relation at all existed between Jure Sulenta and Andrija Sulenta as a settled and established fact in the case.

Appellant directs our attention to the principle announced by the authorities that a beneficiary named in a policy of a fraternal insurance association has no vested interest in the absence of contract with the insured in such policy *"during the life of the policy holder"* and the latter *"may within the limits prescribed by law and the constitution and by-laws of the association change the beneficiary at will,"* citing Brotherhood of Locomotive Firemen and Enginemen v. Ginther, 35 Wyo. 244, 256, 248 Pac. 852, 252 Pac. 1026; Cade v. Head Camp, Pacific Jurisdiction, Woodmen of the World, 27 Wash. 218, 67 Pac. 603; Lentz v. Fritter, 92 Ohio St. 186, 110 N. E. 637. With this proposition we have no quarrel. We have, however, italicized certain words as indicating the parts thereof especially pertinent to the present litigation. We may add also the statements that ordinarily "the rights of

the beneficiary attach and become vested immediately upon the death of the insured," 45 C. J. 166, and cases cited, and that "where a person's eligibility as a beneficiary depends upon his sustaining a particular relation to the member, his eligibility is generally determined as of the time of the member's death," 45 C. J. 167 and cases cited.

Appellant also refers us to 45 C. J. 169-170, where it is said:

"Where restrictions are placed on the right to designate beneficiaries, it is generally held that no one but the society can question the eligibility of the person designated, at least where the sole parties to the contract are the society and the designated beneficiary, *or where the contract, construed with the laws of the society, merely provides for payment to the beneficiary named in the certificate, and no one else.*" (Italics ours.)

The text last cited supplements the statement last quoted by the language immediately following to this effect:

"But the rule has been held inapplicable where the qualifications of beneficiaries are fixed by statute, or where provision is made for the payments of the fund to some one else on failure to designate an eligible beneficiary."

Applying these legal principles to the situation presented by the trial court's finding mentioned above and also to that presented under the by-laws of the insurer, it is evident that the beneficiary Andrija Sulenta, undertaken to be nominated by Jure Sulenta shortly before he died, was not a proper one and he was not entitled to receive any benefits pursuant to the certificates hereinbefore described. In such event the legal heirs, according to the provisions of Section 260, supra, are specifically directed to be paid the "death benefit."

That section undoubtedly contains a definite and clear direction for the payment of the fund "to some one else upon failure to designate an eligible beneficiary," viz., "the legal heirs" of Jure Sulenta.

The argument appears to be advanced, if we understand appellant's position aright, not only that the insurer by filing the answer it did conceded its liability to Andrija Sulenta and that a payment to him should be adjudged, but also that no one else than it had the right to assert that Andrija Sulenta was not entitled to the "death benefit"; also that it had waived such right. In taking this position we are obliged to conclude that appellant is in error.

In 2 Couch's Cyclopedia of Insurance Law, Section 321, Pages 903-904, the text states:

"It also has been said that by paying the amount of the benefit into court the society does not concede the claim of any particular beneficiary, but only expresses thereby an intent that the person entitled to the fund may receive the same upon the conflicting claims being adjudicated. Likewise, it is declared that paying the money into court is not an admission of liability to any particular claimant, but a demand that the court protect the insurer against double liability by determining to whom the money rightfully belongs."

The Supreme Court of Pennsylvania in Grant v. Faires, 253 Pa. 232, 97 Atl. 1060, discussing this matter, used this language:

"And the beneficiary named in his certificate having died in his lifetime, and no other designation having been made, the fund, under the said act of May 24, 1893, (P. L. 126), is payable to his next of kin, whose right thereto became vested at his death. And the contention that their right therein is lost by turning the fund over to the executors to retain as stakeholders until the legal rights of the parties are adjudicated is untenable. The payment to a stakeholder or into court of a fund for which there are rival claimants, to await

the legal adjudication of their respective claims, does not constitute a waiver of the rights of either party.

"On the death of a member his certificate ripens into a legal obligation against the society, which it can only discharge by payment to the right party. And if in such case the society admitting its liability on a membership certificate, for which there are rival claimants, by agreement pays the amount due thereon to a stakeholder, or into court, that the rights of the claimants may be adjudicated, the fund takes the place of the society's liability, and the rights of the claimants are unchanged. Disposal thereof must still be made according to the rules of the society and the law of the state. To hold otherwise is to ignore the very object for which the fund is deposited, to wit, the ascertainment of its legal ownership; not the waiver of rights, but their adjudication. By turning over the fund the society admits its liability and waives any defense it may have to the payment of the claim by whomsoever demanded. But, where the rights of others have become vested by a member's death, the society cannot and does not waive such rights by paying the fund into court."

In similar vein the Supreme Court of Vermont, citing many authorities, in Modern Woodmen of America v. Headle, 88 Vt. 37, 90 Atl. 893, remarked:

"It is also said that it waived the provisions of the by-laws by paying the fund into court and asking that the adverse claimants be required to interplead. By the great weight of authority the society cannot be regarded as having waived the requirement of the by-laws by bringing the bill of interpleader and paying the fund into court. By so doing the society admitted its liability under one or the other of the certificates and asked the court of chancery to protect it by determining the conflicting rights of the claimants; but it cannot be held that the rights of either claimant are prejudiced thereby. The rights of the parties became fixed at the moment of the death of the insured member, and the society was powerless to do anything to affect vested rights. They are controlled by the contract as it was at that time."

In Grand Lodge A. O. U. W. of Maine v. Martin et al., 118 Me. 409, 108 Atl. 355, the court said:

"It is also claimed that a waiver results from the act of the plaintiff in paying the money into court. It is true the plaintiff has thus waived rights of its own, but it has not and cannot waive rights of other interested parties. A. O. U. W. v. Conner, 116 Me. 229, 100 Atl. 1022."

Reviewing a contention similar to that made at bar, the Supreme Court of Michigan in Supreme Lodge, Order of Mutual Protection v. Dewey, 142 Mich. 666, 106 N. W. 140, announced its views thus:

"Counsel for appellant further contend that the association admitted its liability and was willing to pay the fund to Dewey, and that Ducheney had no such legal interest in the fund as to authorize his interference, since only the company can complain of a want of insurable interest, citing: Standard Insurance Co. v. Catlin, 106 Mich. 138, 63 N. W. 897; Hosmer v. Welch, 107 Mich. 470, 65 N. W. 280, 67 N. W. 504; Cowin v. Hurst, 124 Mich. 545, 83 N. W. 274, 83 Am. St. Rep. 344; K. O. T. M. v. McAllister, 132 Mich. 69, 92 N. W. 770, 102 Am. St. Rep. 382; Johnson et al. v. Van Epps, 110 Ill. 551, 562; John Hancock Mut. Life Ins. Co. v. Lawder (R. I.) 48 Atl. 383. If the contract in question were void as a wager policy, and when construed with the laws of the association simply provided for payment to the beneficiary named in the policy and no one else, we should concur in the proposition that the defendant Ducheney had no standing in the case, and that, if the company was willing to pay under its agreement, no one else could complain. But by the express provisions of this policy: 'The rights of the above-named beneficiary or beneficiaries shall be determined by the laws of the order in force on the day of the death of the member,' etc. The laws of the order in force at the time of Mrs. Ducheney's death provided, amongst other things, as follows: 'Sec. 192. Should a member die without designating a beneficiary, or should the designated beneficiary die or prove to be an

unlawful one, or should more than one person claim the same benefit, then the claimants for the benefit shall be recognized in the following order and no other: (1) Wife or husband; (2) children; (3) mother,' etc. This by-law was a part of the contract of insurance as much as though its terms were written into the certificate. The policy provided in legal effect that the sum of $1,000 should be paid to Theodore B. Dewey; but, in case it should be determined that the money could not lawfully be paid to him, then it should be paid to Joseph Ducheney, her husband. The defendant Ducheney has a direct interest in this contract, which he is entitled to enforce."

Nearly ten years later the same court in Knights of Maccabees of the World v. Brown, 186 Mich. 284, 152 N. W. 1085, speaking through Mr. Justice Ostrander, without dissent, said, with reference to the case last mentioned:

"The reasoning in the Dewey Case is persuasive, and in my opinion the point referred to was correctly ruled. Kept in mind, much apparent confusion in the decisions disappears. Applied in the instant case, it required consideration of the contention of Elizabeth Brown that, although she is named as beneficiary in the certificate, Gitty Brown has no right to the fund."

The following excerpt from the opinion of the Supreme Court of Wisconsin in Modern Woodmen of America v. Barber et al., 199 Wis. 635, 227 N. W. 268, is likewise pertinent here:

"As already stated, the certificate in question provided that, in the event that the beneficiary designated in the policy became disqualified, it should then be payable to the widow of the deceased. In that situation no application to change the beneficiary was necessary. The policy was by its terms self-executing in that respect. If Bernice was not a qualified person, then by the express language of the policy the amount of it was payable to the widow. Supreme Lodge v. Dewey, 142 Mich. 666, 106 N. W. 140, 3 L. R. A. (N. S.) 334, 113 Am. St. Rep. 596, 7 Ann. Cas. 681."

So in Logan v. Modern Woodmen of America, 137 Minn. 221, 163 N. W. 292, 2 A. L. R. 1676, it was said:

"We are also unable to assent to the proposition that the payment of the money into court operated to waive the by-law. By paying the money into court, the society simply recognized liability to the rightful claimant thereto, not to any particular claimant; and its action amounted to nothing more than a demand that the court protect it against a double liability, by determining to whom the money rightfully belonged. Supreme Lodge, F. B. v. Price, 27 Cal. App. 607, 150 Pac. 803; Faubel v. Eckhart, 151 Wis. 155, 138 N. W. 615; Berg v. Damkoehler, 112 Wis. 587, 88 N. W. 606."

See also Sanders v. Grand Lodge A. O. U. W. of Illinois, 153 Ill. App. 7; Mendelson v. Gausman, 157 App. Div. 370, 142 N. Y. Sup. 293; Harrison et al. v. Carr, 106 Misc. Rep. 369, 174 N. Y. S. 433; Henderson v. Woodmen of Union et al., 163 Miss. 210, 141 So. 345; Rhodes v. Equitable Life Assurance Society of the United States, 109 Or. 586, 220 Pac. 736, 19 R. C. L., page 1288, Sec. 84; 1 Bacon Life and Accident Insurance (4th Ed.) 899, Sec. 412 a.

The action of the insurer in filing its answer as described above was, of course, taken after the insured's decease and after the rights of the legal heirs of Jure Sulenta to the fund in question had become vested, if any right they had. We do not think that the insurer could by any subsequent action on its part deprive such heirs of that vested right or of the right to establish it through legal means. We do not believe that it endeavored to do so. It merely sought to have the district court determine to whom the fund in the insurer's hands was rightfully and legally payable. In this connection it may be noted that according to the averments of appellant's answer the insurer had theretofore expressly declined to pay the fund over to the defendant

Andrija Sulenta. What was thus sought by the insurer was done by the trial court. The result it reached was in our opinion a correct one, as the authorities hereinbefore briefly reviewed amply establish. The judgment of the district court of Sweetwater County will accordingly be affirmed.

*Affirmed.*

KIMBALL and BLUME, JJ., concur.