HENRICH v. SAIER.

1. Evidence—Deposition—Impeachment—Foundation.

Evidence will not be admitted to show deponent's knowledge that a certain mortgage remains unpaid, which in his deposition he claims is paid, without a proper foundation being laid for impeachment.

2. Same—Hearsay—Admissions—Co-Conspirators.

In a will contest, evidence that one not a party declared to the witness that contestant had made certain admissions to declarant which, if true, would discredit his (contestant's) case, is mere hearsay, and not admissible on any theory that the declarant, by corroborating contestant at the trial, showed himself to be a "co-conspirator."

3. Same—Contest of Will—Testamentary Capacity—Cross-Examination.

In a will contest, when, to show testamentary capacity, a witness who was present testified that a few hours after the execution of the will, and shortly before death, a priest attended the testatrix and administered the last sacrament, and that testatrix took part therein and seemed to understand it, it was error to refuse to permit cross-examination as to the nature and extent of the ceremony.

4. Same—Natural Justice.

The fact that testatrix, in making her will, treated as an advancement an amount loaned to her son on a certain mortgage, which he had already fully paid, being contrary to natural justice, may be considered by the jury, in connection with other facts, as bearing on the question of her testamentary capacity.

Error to Ingham; Person, J. Submitted April 5, 1900. Decided May 15, 1900.

Mary Henrich and others presented for probate the will of Elnora Saier, deceased. The will was allowed, and William Saier and Jessie E. Saier appealed to the circuit court. From a judgment for proponents, contestants bring error. Reversed.

*Smith & Hood* (*Dean & Hooker*, of counsel), for appellants.

*John J. Zimmer* (*L. B. & H. M. Gardner*, of counsel), for appellees.

Montgomery, C. J. This is a contest over the will of Elnora Saier. The grounds of contest are undue influence and mental incapacity. The record discloses that in 1895 Mrs. Saier had executed a will in which she had devised her property to her children, share and share alike, except William and Joseph. The shares which, had she died intestate, would have been theirs, were devised to their respective wives. Before the making of this first will, Mrs. Saier had loaned to her son William $800 on mortgage security, and had loaned to Joseph Saier $500, and to Charles $500. The will offered for probate was executed on the 11th of January, 1898, the day of the testatrix's death, and differs from the first will only in that the shares given by the first will to the wives of William and Joseph were given direct to her sons, and that by the will in question it was recited that these loans of $800, $500, and $500, respectively, should be treated as advancements to William, Joseph, and Charles, and deducted from their respective shares, the will reciting that these sums remained unpaid. The testimony tended to show that the mortgage given by William had on the 2d of November, 1894, been formally discharged by Mrs. Saier, and that William had, by her direction, paid the money due thereon to Joseph.

The children of deceased consisted of Mrs. Mary Henrich, of Milwaukee; Charles Saier, John B. Saier, Joseph Saier, and Mrs. Kate Savage, of Lansing; William Saier, of Millett; and Clara O'Neil, of Charlotte. About a week before Mrs. Saier's death, Mrs. Henrich was sent for, from Milwaukee, and arrived in Lansing five days before the mother's death. She arrived Friday morning, and her mother died the following Tuesday evening. On her arrival she went to the house of her sister Mrs. Savage, and there had a conversation with Mrs. Savage about William's mortgage. By her direction, Mrs. Savage wrote a letter to Mrs. O'Neil, at Charlotte, the same morning. The object of the letter was to have Mrs. O'Neil go to the register's office and ascertain if William had placed on record a discharge of the $800 mortgage. The next Monday, about 10 o'clock, a telegram was received from Mrs. O'Neil, stating that the mortgage was discharged December 7th. Mrs. Savage and Mrs. Henrich were at their mother's house when the telegram came, and Charles was at work at Mrs. Savage's house. On receiving the telegram, Mrs. Savage went over and talked with Charles about it, and they then went back to their mother's house, and read her the telegram and talked to her about it. Mrs. Henrich, Mrs. Savage, and Charles all assert that their mother denied, at once, having made any discharge of the mortgage, and pronounced it a forgery. There was testimony relating to other facts and circumstances from which an inference of undue influence might be drawn by the jury. There was testimony tending to show a want of memory, in some measure affecting the disposition made of her property by the testatrix. The jury found that the discharge of William's mortgage was executed and acknowledged by Mrs. Saier, and that she had apparently forgotten this fact, as she charged that it was a forgery.

There are numerous assignments of error based on the admission of testimony. But two of these require discussion.

Charles Saier was permitted to testify to statements of Joseph to the effect that William had admitted to him that the mortgage given to his mother was unpaid. This testimony was hearsay and clearly inadmissible, unless there is some fact to take it out of the rule excluding hearsay testimony. It is suggested that Joseph Saier had testified in his deposition to the payment of the $800 mortgage, and that this made the testimony of his admissions competent; but it does not appear that any foundation for impeaching the testimony of Joseph Saier was laid. It is also suggested that, if the mortgage was not paid, William Saier and Joseph were co-conspirators. We discover no evidence in the case tending to show conspiracy, unless it be in the fact that the testimony of one witness was corroborated by the other upon this point. It would be an exceedingly dangerous doctrine to admit into the law of evidence that, where two witnesses testify to the same state of facts as to the payment of a sum of money, the opposite party is to be permitted to introduce declarations of one not a party, affecting the rights of a party, under the claim that their testimony shows that they are guilty of conspiracy. We think it was error to admit the testimony.

There is one other item of testimony which was improperly excluded, in our opinion. As tending to show that the testatrix retained her mental faculties, evidence was offered that, a few hours after executing the will, a priest was called to administer the last sacrament, and that Mrs. Saier participated in the service, repeated audibly and properly the prayers, made the sign of the cross at the proper time, and appeared to comprehend the service. On cross-examination of Mrs. O'Neil, who was called as a witness by proponents,— it appearing that she was present at this time,— she was interrogated as to what this service consisted of, and, under objection, the testimony was excluded. We think it should have been admitted. It had a direct bearing upon the condition of the patient.

The charge, in the main, was full and fair, but there is

one portion which, while the rule as laid down is, in the main, correct in the abstract, yet, as applied to the facts in the case, was calculated to mislead the jury :

" Neither, in a case of this kind, are you to be moved by any appeals of any kind made to you. I wish those things could be eliminated from the court-room; * * * and all appeals to your prejudice, all appeals to your passion, all appeals of any kind made to you, are simply so many strings to pull you away from the pure question of fact that you have to determine. And when you go to your rooms I want you to act upon your own judgments, upon your own consciences, in the matter. It is not for you to make a will one way or the other; that is none of your business. You have got no more right to make a will for Mrs. Saier, now that she is dead and gone, than you would have had to step into her room when she was living, and impudently dictate to her what she should do with her property. Whether it is such a will as you would have made is immaterial. Whether she did just right, or did not do right, is immaterial. Those are not questions for you. You gentlemen have the control of your own property, and she had the right to control hers, if she was mentally competent."

It is true that a jury has no right to substitute its own judgment for that of a testator as to what a will ought to be. It is true that whether she did just right was not the ultimate question for the jury to determine. But if she discriminated against William to the extent of this mortgage, claiming that it had not been paid, when in fact it had, this was a circumstance which was to be weighed by the jury, in connection with the other facts in the case, in determining her mental condition, and determining whether she acted under undue influence. It does not require any argument to show that such a provision is against natural justice, and the fact that a provision of the will is against natural justice may be considered, with other facts, as bearing upon this question. *Rivard* v. *Rivard*, 109 Mich. 98 ( 66 N. W. 681, 63 Am. St. Rep. 566).

We think the other questions raised do not call for special discussion. The rule of the case is sufficiently in-

dicated by the foregoing. We cannot, however, pass by in silence certain matters contained in the brief of Messrs. Smith & Hood, attorneys for contestants. The brief contains strictures upon the trial judge which are unwarranted by anything which appears in the record, and which have no place in a legal argument. Some allowance may be made for zeal of counsel, but we cannot permit such matter to be spread upon the records of this court, and a repetition of the offense will call for something more than a reprimand.

For the errors pointed out, the judgment will be reversed, and a new trial ordered.

MOORE, LONG, and GRANT, JJ., concurred. HOOKER, J.. did not sit.