GRAND LODGE, ANCIENT ORDER OF UNITED WORKMEN
*v.* BROWN.

1. INSURANCE—COMPETENCY TO CHANGE BENEFICIARY—CONTRACTS.

In determining the mental competency of insured to change the beneficiary of an insurance policy, the same rules of law are applicable as in the case of bequests or of deeds, and the test is whether he had sufficient mental capacity to understand the business in which he was engaged, the extent of his property, the manner in which he desired to dispose of it, and who were dependent on him.

2. APPEAL AND ERROR—CONCLUSION OF TRIAL COURT.

The conclusion of the trial court in a chancery case, on conflicting evidence, is entitled to much weight on appeal.

3. EVIDENCE—BURDEN OF PROOF—COMPETENCY—PRESUMPTION OF MENTAL SOUNDNESS.

Sanity being the normal condition of the human mind, insanity or incompetency must be established by a preponderance of evidence.[1]

4. SAME—INCOMPETENCY — PRESUMPTION FROM SUBSEQUENT ADJUDICATION.

Although the insured had been adjudged insane subsequently to his making a change in the beneficiaries of his insurance, the burden rested on the first beneficiary who alleged his incompetency, to establish that the change was not made during a lucid interval.

5. WITNESSES — COMPETENCY — STATUTES — MATTERS EQUALLY IN KNOWLEDGE OF DECEASED.

Testimony by a party to a suit in chancery for an interpleader, where the evidence relates to matters equally within the knowledge of deceased, is inadmissible as to the beneficiaries under an executed alteration in a policy of insurance from the witness to the new beneficiaries who are parties to the suit.

6. INSURANCE—BENEFICIARIES—BROTHERS AND SISTERS.

It is a valid change of beneficiary from a wife to insured's brother and sisters, under a by-law authorizing members of his family or persons related to him by blood to be named as such.

---

[1] As to burden of proof as to sanity, see note to *State* v. *Scott* (La.), 36 L. R. A. 726.

7. INSURANCE — VALIDITY OF CHANGE IN BENEFICIARY — IRREGULARITY.

Only the insurer may raise the objection that a change of beneficiary was not regularly effected under its rules, the defense not being available to the original beneficiary.

8. SAME—CONTRACTS—PRESUMPTIONS.

The presumption is in favor of the regularity and legality of a policy of insurance and the power and authority of the insurer to make it in a case where it is claimed that its articles of association had not been amended to permit the change of beneficiaries.

Appeal from Bay; Collins, J. Submitted February 25, 1910. (Docket No. 49.) Decided March 19, 1910.

Bill of interpleader by the Grand Lodge of the Ancient Order of United Workmen against Alida B. Brown and Edward M. Brown, Anna E. Skelley, and Mary Hogan to determine the right to the proceeds of a policy of insurance. From a decree for defendants Edward M. Brown, Anna E. Skelley, and Mary Hogan, defendant Alida B. Brown appeals. Affirmed.

*De Vere Hall* (*Albert V. Ingersoll*, of counsel), for appellant.

*Weadock & Duffy*, for appellees.

STONE, J. This is a bill of interpleader filed in the circuit court of Wayne county, in chancery, and transferred to the circuit court of Bay county, in chancery. Alida B. Brown, defendant and appellant, is the widow of Thomas M. Brown, deceased, and the remaining defendants and appellees are his brother, Edward M. Brown, residing at Washington, D. C., and his sisters, Anna E. Skelley, residing at Batavia, N. Y., and Mary Hogan, residing at Buffalo, N. Y. The bill was filed April 10, 1905, setting forth that complainant was a fraternal beneficiary association incorporated and doing business under the laws of the State of Michigan, being known as sections 8047 to 8057 of the Compiled Laws of 1897 and the amendments

thereto.   This bill avers that the complainant does business through the lodge system, a lodge at that time being located in the city of West Bay City, Mich., known as West Bay City Lodge No. 134.   It appears that on the 20th day of February, 1889, said Thomas M. Brown made application in writing upon the proper blank, to become a member of the West Bay City Lodge of complainant, in which application he requested, and applied for a benefit certificate in the sum of $2,000, and the amount to which he would be entitled on said certificate to be paid at his death to his wife, Alida B. Brown, as beneficiary.   On the same day Mr. Brown was initiated as a member of complainant order, and a certificate was duly issued to him in the sum of $2,000, payable to his wife on his death, a copy of which certificate appears in the record.   On June 26, 1903, the said Thomas M. Brown made application to the complainant for the issuance of a duplicate certificate of membership, claiming and alleging the loss of the original benefit certificate.   This application was made in due form.   On the same day a new certificate was issued to said Thomas M. Brown in the sum of $2,000, bearing the same number as the old one, and in which his wife, Alida B. Brown, was named as beneficiary.   On the 27th day of June, 1903, Mr. Brown surrendered to the complainant the benefit certificate issued to him the day before, with a request indorsed on the back thereof, revoking the designation of his wife, Alida B. Brown, as his beneficiary, and designating in her stead, as his beneficiaries, the defendants, Edward M. Brown, Anna E. Skelley, and Mary Hogan, bearing the relationship to him of brother and sisters. Thereupon a new certificate was issued to said Thomas M. Brown on the same day.   It is conceded in the pleadings that this method of obtaining a new certificate, where the old one was lost or mislaid, and a surrendering of the new one thus obtained, with the designation of the new beneficiary, was the proper and regular form for changing the beneficiaries under the rules of complainant.

Thomas M. Brown died on the 16th day of January, 1905, at Buffalo, N. Y., and proofs of his death were made by said Edward M. Brown, and proofs of claim of the beneficiaries under the benefit certificate were sent in. Later, complainant was notified by the wife, Alida B. Brown, appellant herein, that she would make claim to the amount of the certificate, and because of these conflicting claims, complainant filed this bill for the purpose of having the court determine who was entitled to the fund. All of the defendants answered the bill, and, an issue being joined, the case was heard upon the testimony taken in open court, save that certain depositions, relating to the death and previous condition of said Thomas M. Brown, taken at Buffalo, N. Y., were read in evidence.

It appeared in evidence that at the time of the issuance of the original benefit certificate to Mr. Brown in 1889, he was living with Alida B. Brown as his wife, and they had one son, Frank, who was born in 1886. At the time of his death Mr. Brown was upwards of 55 years of age. For a number of years prior to June 27, 1903, he had resided at Bay City with his wife and son. He had been employed for a number of years by the Michigan Central Railroad Company as freight brakeman, afterwards as passenger brakeman, and then as baggageman. In 1894 or 1896 (the evidence is conflicting as to the date) Mr. Brown was seriously injured by being caught between two cars, in attempting to couple them, the injury consisting of having his head caught between two projecting logs. After this injury he was confined to his home for several weeks, and was in bed attended by a nurse four weeks. During that time he was delirious and out of his head a good deal of the time. After his injury Mr. Brown's eyesight became affected, and a slight deafness which he had before was aggravated, so as to necessitate the use of an ear trumpet. Upon recovering from his injuries he went back into the employment of the Michigan Central Railroad Company, as baggageman, and contin-

ued in such employment practically up to the time of his leaving Bay City in June, 1903.

Upon the hearing of the case it was the claim of the appellant that immediately after his injury a decided change was noticed in Mr. Brown's disposition and conduct; that he became depressed, ugly, and very hard to get along with; that he was irritable and would fly into a rage upon the least provocation; that he became suspicious of his wife and son and imagined they were working against him, and talking about him, when he could not hear them; that his mental condition became gradually worse; that he ill treated and abused his wife and boy. A large number of witnesses were examined, and their testimony tended in a greater or less degree to support the appellant's claim. In the spring of 1903 Mr. Brown was discharged from the railroad service. About that time he visited Chicago for the purpose of taking treatment from a specialist, but it appears that he was not benefited. On June 22, 1903, Mr. Brown called upon H. M. Gillett, Esq., an old friend of his, and a practicing attorney, and said that he wanted a separation agreement drawn, and one was drawn accordingly. He at that time told Mr. Gillett his trouble with his wife and family, and said that he had been denied access to his wife's rooms for several years. Mr. Gillett tried to dissuade Mr. Brown from his course, but the latter seemed determined to have the agreement drawn, and it appears that it was drafted and taken by Mr. Gillett and Mr. Brown to the latter's home for Mrs. Brown's signature. That agreement was as follows:

"This indenture, made this 22nd day of June in the year of our Lord one thousand nine hundred and three, between Thomas M. Brown and Alida B. Brown, his wife, of West Bay City, in the county of Bay and State of Michigan, witnesseth: That whereas, a State of circumstances exists, which, in the opinion of said parties, renders it improper and undesirable that they shall longer continue to live together as husband and wife, or claim or exercise against or toward each other any marital rights, and renders it most right and prudent that they shall

separate and live and remain apart from each other; now, therefore, it is mutually agreed by and between the said parties that they shall from this time henceforth live and remain separate and apart from each other as if they had never been married, and each of them hereby covenants and agrees not in any way to molest, annoy, interfere with, or make claim against the other on account of their marital relations, and the said Alida B. Brown hereby covenants for and in consideration of the premises and of the sum of $300 to her in hand paid by said Thomas M. Brown, and the conveyance to her of the homestead this day made by said Thomas M. Brown, to relinquish and release all her rights and claims upon the said Thomas M. Brown, and upon or against any other property now owned or hereafter acquired by him and upon or against his estate after his decease.

"The said Alida B. Brown, in consideration of the premises, further agrees to and with the said Thomas M. Brown that she will hereafter live separate and apart from him, and from this time forthwith provide for and furnish her own support and the support of their son Frank M. Brown, who will be seventeen years old in October, and will never make any claim on the said Thomas M. Brown, for any aid or assistance, it being the intention of both parties hereto that this separation shall be complete and final the same as if the marriage had been dissolved by the decree of a court of competent jurisdiction.

"And the said Thomas M. Brown hereby covenants and agrees that he will never make any claim or demand upon the said Alida B. Brown arising from their marital relations.

In witness whereof, the said parties have hereunto set their hands and seals, in duplicate, the day and year aforesaid.

[Signed]            " Thomas M. Brown.
[Signed]            " Alida B. Brown.
"Witnesses:
    " H. M. Gillett.
    " Frank M. Brown."

Duly acknowledged by both parties.

A deed turning over the homestead and the furniture contained therein was made and delivered at the same time, and the $300 mentioned in the agreement was paid

to Mrs. Brown.   Mr. Brown then left the house, and it does not appear that he ever returned.   That he was much estranged from his wife and son is very apparent from a letter which he wrote and mailed on June 23, 1903, to Mrs. Skelley, his sister, residing at Batavia, N. Y.   That letter was as follows:

"W. BAY CITY, 6-24, 1903.

"Dear Sister Anna:   As I have been in trouble here a long time we have decided on a separation which I have got.   I have got kicked out of my home and $300 in money which I have worked hard for, to try to have a little something to take care of me with but I had to deed my house and lot to her and give her $300, no place to sleep.   Now, Anna, I do not want you to show her any courtesies because she is not deserving of it.   I have a policy in the A. O. U. W. and she will not give it to me but I have ordered a new one made payable to Minnie, Anna, and Ed.   I have left Jimmy out for this reason, about the time mother died father had to go to work to mortgage his home in order to keep him from getting into trouble and that was money that he had worked hard for and I did not get a thing, that is the reason.   Now Anna there is no use in going into details, maybe if the Lord spares me I may see you this summer and tell you all. I expect a new policy in about a week.   I intend to try and go to the Soldiers' Home if I can get there that is all I can do at present, my health has got the best of everybody I guess.   I have been to Chicago to see some specialists but I could not get any relief. I am about to resign on the railroad before they kick me out the same as my wife has.   Now Anna I told Minnie that the policy would cost to keep it up about $4.00 per month and as I will not be earning any money all I have got is my pension to take care of me, I thought you three between you might keep it up for me so I wrote to Minnie and I will write to Ed. When you answer write W. Bay City, Bay Co., Mich. Don't send to the house because I cannot go there any more.   Tears in my eyes writing this.

"T. M. BROWN."

At the same time the separation agreement was executed Mr. Brown requested Mr. Gillett to get him into the Soldiers' Home at Grand Rapids, Mich.   His application was sent to that institution by his attorney, but he could

not be admitted there because he had served in the Civil War in a New York regiment. The policy referred to in the letter seems to have been in the house, but it was evident that he did not know where it was. On June 27th he changed his beneficiaries as hereinbefore stated. Thereafter Mr. Brown left Bay City and went to Buffalo, N. Y., where he stayed a short time with his sister Mrs. Hogan, and then spent a few days with his sister Mrs. Skelley, at Batavia, N. Y. On July 10, 1903, C. H. Hogan, husband of defendant Mary Hogan, filed a petition in the supreme court of the State of New York alleging that he was a brother-in-law of Thomas M. Brown, who was residing at his house and was insane. The petition prayed that said Thomas M. Brown be alleged insane and be committed to the Buffalo State Hospital. Thereafter Mr. Brown was duly adjudged insane and was committed to said institution, where he remained until his death, January 16, 1905. While Mr. Brown was in the hospital at Buffalo, the assessments on his benefit certificate issued by complainant, were paid by defendant Edward M. Brown, amounting to upwards of $80. The learned circuit judge, after hearing the case, reached the conclusion that the appellees were entitled to the said fund for the following reasons:

"*First.* The complainant concedes that the fund in controversy belongs either to Alida B. Brown, widow, or E. M. Brown, Anna Skelley and Mary Hogan, brother and sisters of the deceased, Thomas M. Brown. The actual controversy then is between the widow on the one side, and the brother and sisters on the other.

"*Second.* That when Thomas M. Brown executed the revocation of the direction for the payment of the beneficiary fund in his certificate provided for, which revocation is dated June 27, 1903, and directed the fund to be paid to his brother and sisters, he was not mentally incompetent to execute the said paper.

"*Third.* That such revocation and new direction was not fraudulent as to his widow, and was not procured by undue influence of the brother and sisters, or either of them.

"*Fourth.* That under the laws of the A. O. U. W. and the certificate issued to the brother and sisters, and the evidence in this case and the law applicable thereto, the revocation and direction were permissible, and that said Edward M. Brown, Anna E. Skelley and Mary Hogan are entitled to the said fund."

And a decree was entered accordingly.

The two points upon which appellant relies for a reversal of the case are:

*First.* That upon June 27, 1903, Thomas M. Brown was mentally incompetent to designate the change of beneficiaries which he did.

*Second.* That under the laws of this State and the laws of the complainant, such designation and change of beneficiaries was not valid or effective.

**Mental Competency.** The solicitor for appellant correctly says that in determining the mental competency of appellant's husband in this case the same rules of law should be applied to the case as are applied to bequests by will or deed. That the test usually followed in determining the mental capacity of the grantor, or testator, in such cases, is whether, at the time in question, he had sufficient mental capacity to understand the business in which he was engaged, to know and understand the extent of his property, and how he wanted to dispose of it, and to understand who are dependent upon him. We have read this entire record carefully, and are free to say that upon the facts the case is a close one. In such a case, where there is evidence pro and con, much weight should ordinarily be given to the conclusion reached by the trial judge, who has had the opportunity of seeing and hearing the witnesses. It should also be borne in mind that sanity is the normal condition of the human mind, and where insanity or mental incompetency is claimed, it should be proved by a preponderance of evidence.

The vital question is, What was this man's mental condition on June 27, 1903? Mr. Gillett's testimony comes the nearest to this date in point of time. It also appears

that he had known Brown from his (Gillett's) boyhood. He testified that on June 22d, and the day before, Brown appeared to know what he wanted to do and how to do it, and the witness gives it as his opinion that at that time Brown was mentally competent, and understood the nature and purpose of the paper. Brown at this time seemed to have an opinion and a will, and would not be dissuaded by Mr. Gillett from the course he had chosen. His relations with his family were strained, and he was irritable when in the presence of his wife. It appears that he dictated the terms of the agreement. An examination of the agreement and the deed made in connection therewith, show that he made a rational disposition of his property, and everything indicates that he had mental capacity to understand the business in which he was engaged, and the extent of his property. We have also copied the letter written the next day for the purpose of aiding us as to the condition of his mind on that day. He has the same grievance as on the day before, but he correctly states what he has done with his property and the reasons therefor. He refers to his certificate and states that he is taking steps to make the change therein, which was made. Knowing that it would be necessary to pay assessments, he requests that these be taken care of. While this letter would indicate that the writer was a despondent and irritable man, it fails to show insanity or an unsound mind, in our judgment. It seems to us that all of the acts of Mr. Brown, as they appear in this record for many days before, and on June 27th, indicate that he was capable of comprehending, and did comprehend, the nature of his act in designating the new beneficiaries.

It certainly cannot be said that the testimony in this case proves that Mr. Brown was insane at the time he applied for and obtained a change of beneficiary. It is incumbent upon appellant not only to prove insanity, but also to prove that the act of the alleged insane person was not done during a lucid interval. This court has held that the act of a man, who had been insane, was valid if made

during a lucid interval. *Ramsdell* v. *Ramsdell*, 128 Mich. 110 (87 N. W. 81). In the latter case deceased had been insane, and had been confined in insane asylums three times prior to 1872. From that time down to 1896 his conduct had given no indication of mental unsoundness. In 1896 his mind again became affected, and he was confined in an asylum, where he was kept until the latter part of July 1897, when his mind seemed to be clear. On September 22, 1897, he executed the deed to his son which was sought to be set aside. Subsequently he had another period of mental disturbance, which lasted off and on until his death. In that case the deed was set aside in the circuit court. In this court, Mr. Justice LONG, speaking for the court, said:

"We think that the decree by the court below cannot stand. There was no direct proof offered by complainant showing an unsettled mental condition of Mr. Ramsdell on the day the deed was executed, nor for some time before that. Complainant rests his case upon the fact that Mr. Ramsdell had been insane in previous years; also some months preceding the making of the deed, as well as after its execution. * * *

"In the present case Mr. Ramsdell was able to describe the land (which consisted of two forties, separately described) from memory. * * *

"We think it apparent that Mr. Ramsdell, at the time the deed was executed, was restored to his mental faculties so far as to be able to comprehend what he was doing, what property he was disposing of, the condition of his family, and his own situation, and was able to act with memory and judgment."

The testimony of Alida B. Brown, as to matters equally within the knowledge of her deceased husband, was incompetent, under section 10212, 3 Comp. Laws, and under the rulings of this court. *Great Camp K. O. T. M.* v. *Savage*, 135 Mich. 459 (98 N. W. 26); *Wallace* v. *Mystic Circle*, 127 Mich. 387 (86 N. W. 853). Upon this record we must hold that Thomas M. Brown, at the time of the act, was mentally competent to change said designation.

Validity of Change of Beneficiary. Appellees claim that this question is not raised by the pleadings, and there is force in the contention. But if this question were properly raised by the pleadings, it is difficult to see how the appellant can complain, since the complainant has admitted its liability, and the complainant order is the only party that has the right to raise the question. *Standard Life & Accident Ins. Co.* v. *Catlin*, 106 Mich. 138 (63 N. W. 897); *Hosmer* v. *Welch*, 107 Mich. 470, 474 (65 N. W. 280, 67 N. W. 504); *Supreme Lodge O. M. P.* v. *Dewey*, 142 Mich. 666 (106 N. W. 140, 3 L. R. A. [N. S.] 334, 113 Am. St. Rep. 596); *Cowin* v. *Hurst*, 124 Mich. 545 (83 N. W. 274, 83 Am. St. Rep. 344).

The by-laws of the association which were offered in evidence contained provisions for changing beneficiaries when the certificate of membership was either mislaid or lost. Section 15 provides:

"Each and every member shall designate the person or persons to whom the beneficiary fund due at death, shall be paid, who shall, in every instance, be one or more members of the family of the member, or some person or persons related to him by blood, or who shall be dependent upon him."

It must be held that Edward M. Brown, Anna E. Skelley, and Mary Hogan, the brother and sisters of deceased, were persons related to him by blood, and were therefore proper persons to be designated as the beneficiaries of Thomas M. Brown. We must hold, therefore, that this association, previous to the amendment of the act under which it was incorporated, viz., Act No. 192, Pub. Acts 1901, had full power to issue a certificate to an assured, designating brothers and sisters, or both, as beneficiaries, and that, if it had not the power, the complainant order only, and not the defendant Alida B. Brown, could raise the question. *Hosmer* v. *Welch, supra; Cowin* v. *Hurst, supra; Great Camp K. O. T. M. M.* v. *Deem,*

143 Mich. 652 (107 N. W. 447); *Grand Lodge A. O. U. W. v. Beath*, 150 Mich. 657 (114 N. W. 662).

But if we were to hold, which we do not, that the amendment of 1901 were necessary to permit the naming of brothers and sisters, there is no proof in this record that complainant did *not* reincorporate. The point is not raised by the pleadings. Offering, by appellant, of the original articles of association does not prove this. The burden of showing that the order did not amend its articles, if such amendment were necessary, and if the point is material, is upon the party who asserts it, and it should be shown by the affirmative proof, and not by negative proof. The presumption is in favor of the regularity and legality of the contract, and of the power and authority of the complainant to make it. At all events, only the complainant could raise the question, and it has not done so. So, in any view of the case, the decree below should be affirmed, with costs of both courts, and it is so ordered.

MONTGOMERY, C. J., and OSTRANDER, HOOKER, and BLAIR, JJ., concurred.