*In re* BLISS' ESTATE.

CLIFF *v.* BLISS.

1. Wills—Mental Capacity Question for Jury.

In will contest case, testimony of attending physician that, due to mastoid infection, testatrix did not have sufficient mental capacity to engage in any business transaction, made a case for the jury as to her mental capacity to make will.

2. Same—Rule of Natural Justice.

The rule of natural justice has no application, where testatrix's only son, to whom she left nothing, was upwards of 50 years of age, married, had no mental or physical infirmity, and was well able to care for himself.

3. Same—Mental Capacity—Instruction.

It was reversible error for the court to instruct the jury, on the question of mental competency, that they might consider, in connection with other facts and circumstances, the fact

that testatrix did not leave her property to her only son, since if she had sufficient mental capacity to understand her relationship to him, it was immaterial that she devised him nothing.

4. SAME—INSANE DELUSIONS—UNDUE INFLUENCE.
   Where there was no evidence as to insane delusions or undue influence, it was error for the court to submit these questions to the jury.
   POTTER, J., dissenting.

Error to Lapeer; Smith (Henry H.), J. Submitted April 12, 1929. (Docket No. 58, Calendar No. 34,216.) Decided June 3, 1929.

Leslie Cliff presented for probate the last will of Rosette Bliss, deceased. Upon notice of contest by Frank Bliss, the question of allowance was certified to the circuit court. From judgment for contestant, proponent brings error. Reversed.

*Glen Smith,* for appellant.

*Herbert W. Smith,* for appellee.

McDONALD, J. The plaintiff has brought error to review a judgment disallowing the will of Rosette Bliss, who died April 29, 1927, leaving the major portion of her estate to Leslie Cliff, a nephew. He was named executor, and, on the death of the testatrix, presented the will in question for probate. Objections were filed by Frank Bliss, the only child of the testatrix. He was left nothing by the will. The grounds for his objections were that the will was the result of mental incompetency and undue influence. These questions were tried out by a jury in the circuit court, who returned a verdict disallowing the will. At the conclusion of the proofs, the plaintiff

moved for a directed verdict on the ground that the evidence presented no question for the jury. The denial of this motion is the first question discussed in plaintiff's brief.

On the 12th of April, 1927, the testatrix was taken sick with acute mastoid infection. She was operated on in the evening of the 21st, and died on the 29th. Dr. Riker, of Pontiac, was her attending physician. He began to treat her on the 12th. She gradually grew worse. On the 18th, he said she had a temperature of 104, that there were signs of cranial pressure, that she was delirious at times, and, like the majority of mastoid patients, her mental condition was "very poor." On the 19th, the day the will was executed, she was worse. She suffered great pain, so much that opiates would not relieve her. She was "desperately ill" on that day. The doctor testified:

"She had this so-called mastoid with such a severe acute infection that she had a temperature of 104; she was drowsy all the time. * * * I would say that her condition was gradually progressing, worse from the 18th to the 19th, and that her condition in between, although she might possibly have had rational times at some time, nevertheless she was in such severe pain, high temperature as it comes on with mastoid, I would say that she was gradually getting worse and probably just as bad in between as the time I saw her. * * * From the condition I found when I operated, in my opinion I think it was developing for the last ten days or two weeks, gradually. The condition that I found would indicate that the mental processes had been interfered with as regards her judgment. In my opinion, I believe the diseased condition would affect her judgment and her mentality. Over a period from the time I saw her on the 18th until the time of the

operation, any time during that.  *  *  *  She had a very severe mastoid. The whole mastoid process was diseased, filled with pus, and eat on into all the cells, extending down the tube of the mastoid and extending up in the brain, and we uncovered from one-fourth to one-half inch of the dura of the brain because the pus had eaten the bone of the skull at that point, and so I uncovered that in order to get drainage and she wouldn't get any cranial lesion.''

Following this, the doctor gave his opinion that when she executed the instrument in question April 19th, the testatrix did not have sufficient mental capacity to engage in any business transaction that would require the ''exercise of the reasoning faculties and a continuing line of thought.'' His opinion was based on his observations as her attending physician and on the condition disclosed by the operation. The doctor's testimony made a case for the jury on the question of mental incompetency.

Error is assigned on the charge of the court relative to the application of the so-called rule of natural justice. This rule has no application to the facts of the case, and the court was wrong in instructing the jury that they might consider it. Frank Bliss, the only child of testatrix, was 50 years of age and upwards at the time the will was executed. He was married. He had no mental or physical infirmity, and was well able to care for himself. In view of these facts, his mother was under no legal obligation to leave him any part of her estate. *Rivard* v. *Rivard,* 109 Mich. 98 (63 Am. St. Rep. 566); *In re Allen's Estate,* 230 Mich. 584.

On this question, the trial court correctly charged the jury in accordance with the rule stated in *Re Allen's Estate, supra,* but he immediately thereafter qualified his instruction with the statement that they

might consider the fact that the testatrix did not leave her property to "her only son, and only child," that while that fact was not of itself sufficient to establish mental incompetency, it was proper for them to consider it in connection with the other facts and circumstances. This was reversible error. If she had sufficient mental capacity to understand her relationship to her son, it was immaterial that she devised him nothing.

There was no evidence as to insane delusions or undue influence, and it was error for the court to submit these questions to the jury.

The judgment is reversed, and a new trial granted, with costs against the contestant.

NORTH, C. J., and FEAD, FELLOWS, WIEST, CLARK, and SHARPE, JJ., concurred with McDONALD, J.

POTTER, J. (*dissenting*). In my opinion, this case ought not to be reversed on account of the trial court's charge, which was warranted, not only by the decisions of this court, but by the great weight of authority in this country and England. *McGinnis* v. *Kempsey*, 27 Mich. 363; *Rivard* v. *Rivard*, 109 Mich. 98 (63 Am. St. Rep. 566); *Henrich* v. *Saier*, 124 Mich. 86; *Spencer* v. *Terry's Estate*, 133 Mich. 39; *In re Morse's Estate*, 146 Mich. 463. Wigmore on Evidence, Par. 229, and cases cited.

Whether one is mentally competent to execute a will at a particular time is a question of fact. Such fact is determined by the exercise of the judgment and discretion of the court or jury, based upon all the facts in the case. The probative facts most important are those resulting from the conduct and actions of the testator. Human conduct and actions are found to be natural or unnatural, reasonable or

unreasonable, sensible or absurd, sane or insane, in accordance with prevailing standards. Conduct and actions which are unnatural, unreasonable, and absurd, cause one to conclude the actor is insane—mentally incompetent. A rule which permits consideration of evidence of unnatural, unreasonable, and absurd conduct and actions of the testator, not too remote, involved collaterally, but excludes evidence which arises from the provisions of the will itself, considered in connection with evidence of the testator's heirs, relatives, and associates, is wrong in principle. The judgment should be affirmed.