HARRIS *v.* COPELAND.

JOHN HANCOCK MUTUAL LIFE INSURANCE
COMPANY *v.* SAME.

1. APPEAL AND ERROR—CHANCERY CASES—DE NOVO HEARING—EVIDENCE.

    The Supreme Court hears chancery cases *de novo* on the record presented and comes to its own conclusion upon the issues involved, although it does take into consideration the fact that the trial court has a better opportunity of evaluating the evidence presented by oral testimony.

2. INSURANCE—CHANGE OF BENEFICIARY—MENTAL COMPETENCY—APPLICABLE TEST.

    The test to be applied in determining the mental competency of an insured at the time he attempts to effect a change of beneficiary in a policy of life insurance is whether or not he then had sufficient mental capacity to understand the extent of his property and how he wanted to dispose of it and who were dependent upon him.

3. SAME—CHANGE OF BENEFICIARY—MENTAL COMPETENCY—EVIDENCE.

    Trial court's finding that insured was mentally competent to effect a change in beneficiary in 3 insurance policies to his second wife from his own daughter with whom he had been living until shortly before resumption of his living with his second wife is affirmed under record presented, including the testimony on behalf of the daughter which was in conflict with that of 2 physicians, an attorney and an investigator for one of the insurers.

REFERENCES FOR POINTS IN HEADNOTES

[1] 3 Am Jur, Appeal and Error §§ 815, 895, 912.
[2, 3] 29 Am Jur, Insurance § 1322.
[2, 3] Avoidance on ground of fraud, mistake, duress, or mental incompetency of otherwise validly effected change of beneficiaries of insurance policies. 105 ALR 950.

Appeal from Wayne; Maher (Thomas F.), J. Submitted April 8, 1953. (Docket Nos. 20, 21, Calendar Nos. 45,718, 45,719.) Decided June 8, 1953.

Bill by Lucy J. Harris against Carrie Copeland and Metropolitan Life Insurance Company, a New York corporation, to determine right to proceeds of 2 insurance policies. Cross bill of interpleader by Metropolitan Life Insurance Company against plaintiff and other defendant.

Bill of interpleader by John Hancock Mutual Life Insurance Company, a Massachusetts corporation, against Carrie Copeland and Lucy J. Harris to determine right to proceeds of life insurance policy.

Decree for Lucy J. Harris. Carrie Copeland appeals. Affirmed.

*Stewart A. Ricard,* for Lucy J. Harris.

*Gabriel Glantz, A. Lewis Fineberg* and *Gabriel Cohn,* for Carrie Copeland.

SHARPE, J. The issue in this case is whether Samuel L. Harris was competent to make the change in beneficiaries in certain insurance policies on March 30, 1950, and April 11, 1950.

The record shows that Samuel Harris, his wife, Carrie Harris, and daughter Carrie, now Carrie Copeland, came to Detroit in the year 1918 or 1920. He secured employment at the Ford Motor Company and continued in such employment until February 3, 1950. On November 12, 1948, he took out a life insurance policy on his own life in the amount of $3,200 from the John Hancock Mutual Life Insurance Company in which Carrie Copeland was named as the beneficiary.

On June 1, 1936, and on March 6, 1942, Samuel Harris took out policies with the Metropolitan Life Insurance Company in the amounts of $480 and $476. On February 3, 1948, Samuel Harris changed the beneficiary on each of the Metropolitan policies to Carrie Copeland, his daughter. Samuel Harris lived with Carrie Harris until her death in December, 1945. In June, 1946, Samuel Harris married Lucy Jones. They lived together for a period of about 3 weeks. Lucy Harris did not see Samuel Harris from November, 1946, until about March 12 or March 13, 1950, at which time she went to the home of Carrie Copeland and removed Samuel Harris to her home.

On or about March 30, 1950, a lost certificate form and a change of beneficiary form were signed by Samuel Harris changing the beneficiary on the John Hancock policy to Lucy Harris, and on April 11, 1950, a letter was written by Ralph J. Osborne to the Metropolitan Life Insurance Company requesting that the beneficiary be changed from Carrie Copeland to Lucy Harris. This letter was countersigned by Samuel Harris. Samuel Harris died December 26, 1950. On January 22, 1951, plaintiff, Lucy Harris, filed a bill of complaint against Carrie Copeland, and the Metropolitan Life Insurance Company, claiming the proceeds of the 2 Metropolitan policies. The defendant, Carrie Copeland, filed an answer and cross bill to plaintiff's bill of complaint.

The Metropolitan Life Insurance Company, by court order, paid the amount of the 2 policies to the clerk of the court.

On March 22, 1951, the John Hancock Mutual Life Insurance Company filed a bill of interpleader against defendants Lucy Harris and Carrie Copeland. The insurance company paid the amount of the money to the county clerk on an order of the court. After both interpleading insurance compa-

nies paid the amount of the 3 policies into court, an order was entered discharging each of the insurance companies from further participation in the cause.

On June 3, 1952, the 2 causes were consolidated for trial. The interested parties stipulated that the only issue in the contest was whether Samuel Harris was mentally competent to make the change of beneficiary in the insurance policies from his daughter, to his wife, at the time when the attempts to do so were made by Samuel Harris. When Samuel Harris died the change of beneficiary in the John Hancock Life Insurance policy had been made by the insurance company, but the change of beneficiary had not been made by the Metropolitan Life Insurance Company. The cause came on for trial and at its conclusion the trial court entered a decree holding that Samuel Harris was mentally competent to make a change of beneficiary on the dates mentioned. In an opinion filed the trial court stated:

"The court has heard the testimony as offered by the plaintiff Harris and the defendant Carrie Copeland, and is of the opinion that the testimony preponderates completely in favor of Lucy Harris to the effect that Samuel Harris at the time he designated the beneficiary was of sound mind and competent to do so.

"In reaching that conclusion the court has taken into consideration particularly the testimony of Dr. Hall and Dr. Dygert, both of whom made examination of this man,—Dr. Hall on February 7th, Dr. Dygert on May 3d, in the year 1950, and they both were of the mind that he was capable of handling his affairs. Also, the court has taken into consideration the testimony offered by Majorie Campbell who interviewed the deceased on April 18th and again on June 26th, in the year 1950. These assignments, or rather the designation of the beneficiaries, I believe, were made in March and in April of the year 1950.

The court has also considered the testimony of Mr. Ralph Osborne, a member of this bar, and is impressed by his testimony. He was the attorney who represented the deceased at the time of the transfer or attempted transfer of the beneficiary, that is, of the policies of the Metropolitan Life Insurance Company."

Defendant, Carrie Copeland, appeals and urges that the trial court was in error in holding that Samuel Harris was competent to make the change of beneficiaries when he attempted to do so.

This is a chancery case and we hear the case *de novo* and come to our own conclusion upon the issue involved. We, also, take into consideration that the trial court had a better opportunity of placing a value upon the evidence submitted than we who are only privileged to evaluate this evidence from a typewritten record.

We note that deceased was 66 or 67 years old at the time he attempted to make a change of beneficiaries; that in December, 1949, he worked 17 days; that in January, 1950, he worked 19 days and 3 days in February, 1950, when his employment was discontinued; that on May 3, 1950, deceased was in the Receiving Hospital for an eye disease and that in June, 1950, deceased was taken to Receiving Hospital as he had suffered a cerebral thrombosis; and that in November, 1946, Lucy Harris commenced an action for separate maintenance against Samuel Harris, but later discontinued the suit.

The test to be applied in determining the mental competency of deceased at the time the change in beneficiary was attempted is: Did he have sufficient mental capacity to understand the extent of his property and how he wanted to dispose of it, and who were dependent upon him. See *Grand Lodge, Ancient Order of United Workmen* v. *Brown,* 160 Mich

437 and *Mutual Life Ins. Co. of New York* v. *Hughes,* 292 Mich 644.

We are satisfied from a review of the entire record that the trial court correctly determined that deceased was mentally competent to legally effect a change in beneficiary on the dates heretofore mentioned.

Marjorie Campbell, an investigator for the John Hancock Mutual Life Insurance Company, called on deceased on or about April 18, and June 26, 1950. She testified:

"If I find anything unusual in the course of my work, I report that.  *  *  *

"*Q*. If you find a condition that challenges your belief in a man's sanity, you make notes of that?

"*A*. Yes. I did not make such a note on the first and second visit.

"*Q*. So far as this man was concerned on either or both of your visits, did he seem to you to be mentally sane or sound?

"*A*. Yes.

Dr. Winthrop Hall, who made physical examinations of employees for the Ford Motor Company, testified that he examined deceased on February 7, 1950, to determine his working classification for placement work:

"*Q*. If there is any question in your mind as to a man's mental ability, is he referred by you to somebody else?

"*A*. He is.

"*Q*. And was he referred in this case?

"*A*. No mention was made of any such referral.

"*Q*. Was that because in your opinion you concluded he was sane?

"*A*. That would have to be assumed. It is my duty to protect the man that I examine and to protect the employees of the Ford Motor Company. I have that in mind when I make the examinations

of the particular individuals. I had it in mind when I made the examination of this man, Sam Harris. I did not make any reference referring this man to any psychopathic department. From my examination of this man, I conclude that he was sane."

Dr. Harold Hall Dygert, a physician employed by the department of health and who worked at the Receiving Hospital, testified concerning deceased's eye operation in May, 1950:

"*Q.* Now at that time, is there any notation as to anything about alertness or cooperation?

"*A.* Yes, there is a statement on the chart which described the patient as alert and cooperative.

"*The Court:* That is May 3, 1950?

"*A.* Yes. It shows that he was alert and cooperative. This is consistent with sanity. * * *

"*The Court:* He was mentally O.K. in May?

"*A.* Apparently. I didn't see him.

"*The Court:* The record reveals that he was alert and cooperative?

"*A.* Yes. * * *

"In uncontrolled glaucoma, the eye is filled with fluid and that fluid is drained through a duct. When that duct becomes clogged to the point that the fluid cannot be drained off as rapidly as it is formed, the pressure within the eye becomes considerably increased, the eye becomes very painful, and the sight may be lost in that eye. The situation that he had was a painful one. * * *

"*The Court:* A person can be confused without being mentally incompetent?

"*A.* That is right.

"*Q.* Could a person be confused because of pain?

"*A.* Yes.

"*Q.* That would not say that the man was mentally incompetent?

"*A.* It would not."

Ralph J. Osborne, an attorney, testified that prior to the events involved in this cause he had been the

attorney for Lucy Harris in the divorce action which was later dismissed for lack of prosecution; that about April 12, 1950, deceased and Lucy Harris came to his office for the purpose of changing the beneficiaries on the insurance policies in question. He testified:

"I had a conversation with him, probably 40 or 50 minutes. He told me the nature of his visit. I recognized him. He recognized me. He told me what his problem was.

"Q. What did he say his problem was?

"*A.* He stated to me that he had 2 policies of insurance with the Metropolitan Life Insurance Company; that the beneficiary in those policies was Carrie Copeland; that he desired to change the beneficiaries in those policies and he was unable to get the policies. * * * He asked me to make the change in beneficiary for him, and he stated that he wanted to make his wife, Lucy Harris, beneficiary. * * * From what I observed of him upon all those occasions in 1946, and the last meeting in 1950, he was of sound mind."

As against the evidence produced by Lucy Harris, defendant Carrie Copeland produced witnesses who testified that deceased was mentally deranged and unbalanced from January, 1950, until the middle of March, 1950. It thus appears that the mental capacity of deceased in March and April, 1950, presents a question of fact to be decided by the trier of the facts. In our opinion the facts in this case sustain the finding of the trial court that deceased knew what he was doing and was able to act with memory and judgment.

The decrees of the trial court are affirmed, with costs to Lucy Harris as against Carrie Copeland.

DETHMERS, C. J., and ADAMS, BUTZEL, CARR, BUSH-NELL, BOYLES, and REID, JJ., concurred.