202 Mich. App. 329 (1993)
508 N.W.2d 181
In re ERICKSON ESTATE (KIGAR v. MICHIGAN CONFERENCE ASSOCIATION OF SEVENTH-DAY ADVENTISTS)
Docket No. 142291.
Michigan Court of Appeals.
Submitted October 5, 1993, at Grand Rapids.
Decided November 1, 1993, at 9:50 A.M.
Duane J. Beach, for Lorraine Kigar.
Vernon L. Alger, for Michigan Conference Association of Seventh-Day Adventists.
Before: FITZGERALD, P.J., and REILLY and P.R. JOSLYN,[*] JJ.
REILLY, J.
Respondent, Michigan Conference Association of Seventh-day Adventists, appeals as of right an amended probate court order allowing a final accounting filed by petitioner, Lorraine Kigar, the special conservator of the estate of Fritz Erickson, a legally incapacitated person. The order recognizes the validity of a change in beneficiaries on six annuities. We affirm.
Under the terms of Erickson's will and revocable trust agreement, respondent was the beneficiary of Erickson's estate. Respondent contends that Jerry Kershner, Erickson's insurance agent, unduly influenced Erickson to change the beneficiaries on the six annuity contracts, valued at $91,000, from Erickson's estate to his nieces, Kigar and her sister, Audrey Hunt, thus depriving respondent of its potential inheritance. Respondent argues that petitioner failed to overcome the presumption of *331 undue influence and, therefore, the probate court erred in recognizing the validity of the change of beneficiaries. We disagree.
Findings of fact made by a probate court sitting without a jury will not be reversed unless clearly erroneous. In re Powell Estate, 160 Mich App 704, 710; 408 NW2d 525 (1987). A finding is said to be clearly erroneous when the reviewing court is left with a definite and firm conviction that a mistake has been made. In re Miller, 433 Mich 331, 337; 445 NW2d 161 (1989). The reviewing court will defer to the probate court on matters of credibility, and will give broad deference to findings made by the probate court because of its unique vantage point regarding witnesses, their testimony, and other influencing factors not readily available to the reviewing court. Id.; MCR 2.613(C).
To establish undue influence it must be shown that the grantor was subjected to threats, misrepresentation, undue flattery, fraud, or physical or moral coercion sufficient to overpower volition, destroy free agency, and impel the grantor to act against the grantor's inclination and free will. Motive, opportunity, or even ability to control, in the absence of affirmative evidence that it was exercised, is not sufficient. Kar v Hogan, 399 Mich 529, 537; 251 NW2d 77 (1976).
A presumption of undue influence arises upon the introduction of evidence that would establish (1) the existence of a confidential or fiduciary relationship between the grantor and a fiduciary, (2) the fiduciary, or an interest represented by the fiduciary, benefits from a transaction, and (3) the fiduciary had an opportunity to influence the grantor's decision in that transaction. Id.
Respondent argues that it is entitled to the presumption of undue influence. Respondent contends that Kershner benefited from the transaction *332 because the changing of the beneficiaries was a service offered by Kershner that "was a part of an ongoing relationship which ... resulted in a sale of $157,000 of annuities, some before and some after the change of annuity service." We disagree.
The benefit must arise from the specific transaction claimed to have been the subject of undue influence. Id. Respondent concedes that Kershner received no commission from the change of beneficiaries. The probate court determined that Kershner had no financial interest in the act of changing beneficiaries. We believe that the record supports this conclusion and, therefore, the presumption does not apply. Moreover, we agree with the probate court that undue influence was not exerted upon Erickson because he was not pressured or coerced into changing his beneficiaries.
Further, we conclude that the probate court did not clearly err in finding that Erickson was sufficiently competent on April 27, 1990, to change beneficiaries. The test of mental capacity to contract is whether the person in question possesses sufficient mind to understand in a reasonable manner the nature and effect of the act in which the person is engaged. To avoid a contract it must appear not only that the person was of unsound mind or insane when it was made, but that the unsoundness or insanity was of such a character that the person had no reasonable perception of the nature or terms of the contract. Howard v Howard, 134 Mich App 391, 396; 352 NW2d 280 (1984); Star Realty, Inc v Bower, 17 Mich App 248, 250; 169 NW2d 194 (1969).
Similarly, the test to be applied in determining the mental competency of an insured at the time the insured attempts to effect a change of beneficiaries of a life insurance policy is whether the *333 insured then had sufficient mental capacity to understand the business in which the insured was engaged, to know and understand the extent of the insured's property, how the insured wanted to dispose of it, and who are dependent upon the insured. Harris v Copeland, 337 Mich 30; 59 NW2d 70 (1953); Grand Lodge, Ancient Order of United Workmen v Brown, 160 Mich 437; 125 NW 400 (1910). A mentally incompetent person is one who is so affected mentally as to be deprived of sane and normal action. A person may be incapable of conducting his business successfully and still not be mentally incompetent. Henderson v Henderson, 206 Mich 36; 172 NW 623 (1919). Where there is evidence pro and con, much weight should ordinarily be given to the conclusion reached by the probate judge, who has had the opportunity of seeing and hearing the witnesses. Grand Lodge, supra at 445. Where insanity or mental incompetency is claimed, it should be proved by a preponderance of the evidence. Id.
The probate court believed the testimony of Kershner, who had befriended the Ericksons. Kershner testified that although Erickson had difficulty understanding financial matters, he believed that Erickson understood the idea of naming his nieces rather than his church as beneficiaries, and that he would not have had Erickson make the change if Erickson did not comprehend it.
When Erickson testified on March 6, 1991, he was confused about some matters, and did not understand the nature of an annuity. However, he was coherent when discussing family relationships, and indicated that he had agreed to name his nieces as beneficiaries. The probate court found that even though Erickson's mental abilities were weakened at the time of trial, he had the mental *334 capacity to agree to the change of beneficiaries in April, 1990. The probate court determined that after discussing the matter of changing beneficiaries, Erickson acknowledged the idea by executing the forms necessary to accomplish the change.
Having reviewed the record, we cannot say that we are convinced that a mistake has been made. The probate court's findings that there was no undue influence and that Erickson was mentally competent to change his beneficiaries on the six annuities was not clearly erroneous.
Affirmed.
NOTES
[*] Circuit judge, sitting on the Court of Appeals by assignment.